1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

VALERIE SAMPSON and DAVID
RAYMOND, on their own behalf and on the
behalf of all others similarly situated,

9

Plaintiffs,

10

v.

11

KNIGHT TRANSPORTATION, INC., an
Arizona corporation, KNIGHT
REFRIGERATED, LLC, an Arizona limited
liability company, and KNIGHT PORT
SERVICES, LLC, an Arizona limited liability
company,

12
13
14
15
16

Defendants.

NO. 2:17-cv-00028-JCC

**PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

**Note on Motion Calendar: 5/18/18**

17
18
19
20
21
22
23
24
25
26
27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ..................................................................................................1

II. FACTUAL AND LEGAL BACKGROUND ..................................................3

    A. Knight's Dry Van, Refrigerated, and Port Services divisions
    operate uniformly in Washington .........................................................3

        1. Knight's Washington-based drivers ........................................3

        2. Knight's uniform policies and practices...................................4

        3. Knight pays all Washington drivers on a piece-rate basis........................5

    B. Knight systematically violates Washington's wage and hour laws......................6

        1. Knight failed to pay Class members for rest breaks for part
        of the Class period .......................................................................6

        2. Knight fails to pay minimum wages to Class members for
        attending its orientation program...............................................7

        3. Knight fails to provide compensation reasonably equivalent
        to overtime pay to Class members who work more than
        40 hours in a week .......................................................................9

        4. Knight unlawfully deducted $0.02 per mile from the wages
        of Class members pursuant to its per diem program for part
        of the Class period .....................................................................11

        5. Knight has uniformly failed to compensate Class members
        for most if not all of their non-driving work ...........................13

III. ARGUMENT AND AUTHORITY ................................................................14

    A. Plaintiffs satisfy the class certification requirements under Rule 23(a) ..............14

        1. Plaintiffs satisfy the numerosity requirement..........................16

        2. There are numerous common questions of law and fact .........16

        3. The Named Plaintiffs' claims are typical of the Class claims.................18

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4. The Named Plaintiffs and their Counsel will fairly and adequately protect the interests of the Class ........................................... 19

B. Plaintiffs meet the requirements for certification under Rule 23(b)(3) ............... 20

1. Common factual and legal questions concerning Knight's conduct predominate over any individual damages issues ..................... 20

2. Plaintiffs satisfy the superiority requirement ......................................... 22

3. This case presents no particular management difficulties ...................... 22

4. Constitutionally sound notice can be provided to Class members ................................................................................................ 24

IV. CONCLUSION .............................................................................................. 24

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - ii
CASE NO. 2:17-CV-00028-JCC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Alvarez v. IBP, Inc.*,
  339 F.3d 894 (9th Cir. 2003) ...................................................................... 23

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................ 20, 22

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1964) ........................................................................ 10, 23

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010) ...................................................................... 15

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ...................................................................... 20

*Connor v. Automated Accounts, Inc.*,
  202 F.R.D. 265 (E.D. Wash. 2001) ............................................................ 22

*Donovan v. Bel-Loc Diner*,
  780 F.2d 1113 (4th Cir. 1985) ...................................................................... 23

*Eisenberg v. Gagnon*,
  766 F.2d 770 (3d Cir. 1985) ...................................................................... 20

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................ 15, 18

*Gonzales v. Arrow Fin. Servs.*, LLC,
  489 F. Supp. 2d 1140 (S.D. Cal. 2007) ...................................................... 15

*Gonzalez v. U.S. Dept. of Homeland Sec.*,
  239 F.R.D. 620 (W.D. Wash. 2006) ............................................................ 16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1988) ...................................................................... 17

*Hanon v. Dataprods. Corp.*,
  976 F.2d 497 (9th Cir. 1992) ...................................................................... 18

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Helde v. Knight Transp., Inc.*,
    C 12-0904 RSL, 2016 WL 1687961 (W.D. Wash.
        April 26, 2016) ...................................................................... 2, 6, 17, 21, 22, 24

*Helde v. Knight Transp., Inc.*,
    C 12-0904 RSL, 2013 WL 5588311 (W.D. Wash. Oct. 9, 2013) ...... 2, 8, 11, 14, 17, 22

*In re Wash. Mut. Mortgage-Backed Secs. Litig.*,
    276 F.R.D. 658 (W.D. Wash. 2011) ................................................................ 17

*Jordan v. County of Los Angeles*,
    669 F.2d 1311 (9th Cir.1982) ......................................................................... 16

*Kirkpatrick v. Ironwood Commcn's., Inc.*,
    No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006) .................. 15, 16

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ......................................................................... 16

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*,
    268 F.R.D. 670 (W.D. Wash. 2010) ................................................................ 16

*Mendez v. RL Carriers, Inc.*,
    Case No. C 11-2478 CW, 2012 WL 5868973 (N.D. Cal. Nov. 19, 2012) ......... 2, 17, 22

*Mendis v. Schneider Nat'l Carriers, Inc.*,
    C15-0144-JCC, 2017 WL 497600 (W.D. Wash. Nov. 10, 2016) ............ 2, 9, 11, 17, 22

*Mortimore v. Fed. Deposit Ins. Corp.*,
    197 F.R.D. 432 (W.D. Wash. 2000) ................................................................ 22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ...................................................................................... 24

*Olson v. Tesoro*,
    2007 WL 2703053 (W.D. Wash. Sept. 12, 2007) ............................................ 23

*Pforr v. Food Lion, Inc.*,
    851 F.2d 106 (4th Cir. 1988) ......................................................................... 23

*Ramos v. SimplexGrinnell LP*,
    796 F. Supp. 2d 346 (E.D.N.Y. 2011) ......................................................... 17, 21

*Reich v. Gateway Press, Inc.*,
    13 F.3d 685 (3d Cir. 1994) ............................................................................ 23

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2009) ...................................................................... 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................ 15

*Toering v. EAN Holdings, LLC*,
   No. C 15-2016 JCC, 2016 WL 4764850 (W.D. Wash. Sept. 13, 2016)................ 15-20

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. &*
  *Serv. Workers Intern. Union AFL-CIO, CLC v. Conoco Phillips Co.*,
   593 F.3d 802 (9th Cir. 2010) .............................................................. 15, 20

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ...................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................. 14, 15

*Zeisel v. Diamond Foods, Inc.*,
   No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011) ........................ 15

**STATE CASES**

*Anfinson v. FedEx Ground Package Sys., Inc.*,
   174 Wn.2d 851, 281 P.3d 289 (2012) .......................................................... 23

*Demetrio v. Sakuma Bros. Farms, Inc.* ("*Sakuma*"),
   183 Wn.2d 649, 355 P.3d 258 (2015) ............................................................ 6

*Pellino v. Brink's Inc.*,
   164 Wn. App. 668, 267 P.3d 383 (2011).................................................. 6, 15

*SPEEA v. Boeing Co.*,
   139 Wn.2d 824, 991 P.2d 1126 (2000) .......................................................... 7

*Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr.*,
   175 Wn.2d 822, 287 P.3d 516 (2012) ............................................................ 6

**FEDERAL STATUTES**

49 U.S.C. § 3101 ............................................................................................ 9

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## STATE STATUTES

RCW 49.12.150 ......................................................................................... 7, 13

RCW 49.46.020 .................................................................................... 7, 8, 13

RCW 49.46.040 ............................................................................................ 10

RCW 49.46.130 ............................................................................................ 6, 9

RCW 49.48.010 ............................................................................................. 12

RCW 49.52.060 ................................................................................. 11, 12, 13

## FEDERAL RULES

Fed. R. Civ. P. 23(b)(3) ........................................................................ 20, 22

49 C.F.R. § 383.21 ......................................................................................... 4

## STATE RULES

WAC 296-126-020 ........................................................................................ 14

WAC 296-126-021 ................................................................................... 13, 14

WAC 296-126-025 ........................................................................................ 12

WAC 296-126-028 ............................................................................. 11, 12, 13

WAC 296-126-050 ........................................................................................ 10

WAC 296-126-092 ........................................................................................ 10

WAC 296-128-010 ............................................................................... 9, 10, 12

WAC 296-128-011 ........................................................................................ 10

WAC 296-128-012 .......................................................................................... 9

WAC 296-128-020 ........................................................................................ 10

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# OTHER AUTHORITIES

Wash. Dept. of Labor & Indus. Admin. Policy ES.C.2 (Sept. 2, 2008) ..................................... 7

Herbert Newberg & Alba Conte,
    *Newberg on Class Actions* § 12.4 (5th ed.) ................................................................. 23

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - vii
CASE NO. 2:17-CV-00028-JCC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# I. INTRODUCTION

Defendants Knight Transportation, Inc., Knight Refrigerated LLC, and Knight Port Services LLC (collectively, "Knight" or "Defendants") have engaged in a systematic course of wage and hour abuses against Washington-based truck drivers since before the start of the proposed Class period. Indeed, Knight Transportation, Inc. has already been found liable in a previous class action lawsuit for some of the same violations of Washington law alleged here and, yet Knight and its subsidiaries, Knight Refrigerated and Knight Port Services, have continued to engage in the same unlawful wage and hour abuses.

The abuses Plaintiffs allege here have taken several primary forms: (1) Knight failed to separately compensate drivers for the paid rest breaks to which they were entitled, whether received or not; (2) Knight fails to pay drivers minimum wage for their participation in mandatory orientation; (3) Knight fails to pay drivers overtime compensation when they work more than 40 hours in a week; (4) Knight took unlawful deductions and rebates from drivers' wages; and (5) Knight fails to pay drivers for all of the time that they work, including non-driving work.

Named Plaintiffs Valerie Sampson and David Raymond ("Plaintiffs") bring this action under Washington law on behalf of the following proposed class (the "Class"):

> All current and former driver employees of Knight Transportation, Inc., Knight Refrigerated, LLC and/or Knight Port Services, LLC who at any time from July 1, 2013 through the date of final disposition, worked as drivers while residing in the state of Washington.

During their employment with Knight, Plaintiffs were subjected to the company's common course of wage and hour abuses, and they were not alone. Fifteen former drivers have stepped forward to provide declarations echoing Plaintiffs' complaints about Knight's unlawful acts. Furthermore, Knight's internal documents and data corroborate Plaintiffs' claims and reveal that hundreds of Washington-based drivers have been equally affected. This wage theft results in Knight financially benefiting from the unlawful and intentional exploitation of its drivers.

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION – 1
CASE NO. 2:17-cv-00028-JCC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Plaintiffs seek to have this case certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3) so the claims of hundreds of Washington-based drivers can be resolved in one fair and efficient proceeding. Certification is appropriate because the numerous questions of law and fact common to all proposed class members predominate over any individualized issues. Moreover, Plaintiffs' claims and the claims of the proposed class members arise out of a common nucleus of operative facts: Knight's uniform employment practices. As courts have found in similar wage and hour disputes, including class actions on behalf of truck drivers who were being similarly exploited by their employers, class treatment is both manageable and superior to other methods of adjudication. *See Mendis v. Schneider Nat'l Carriers, Inc.*, C15-0144-JCC, 2017 WL 497600 (W.D. Wash. Nov. 10, 2016) (certifying class and subclasses of truck drivers alleging claims for rest breaks, overtime, and deduction claims); *Mendez v. RL Carriers, Inc.*, Case No. C 11-2478 CW, 2012 WL 5868973 (N.D. Cal. Nov. 19, 2012) (certifying class of three kinds of truck drivers alleging claims for rest break, overtime and minimum wage violations under California law); Declaration of Erika L. Nusser (Nusser Decl.), Ex. 1[1] (Order Granting Plaintiffs' Motion for Class Certification, *Bodily v. Skagit Transp., Inc.*, King County Cause No. 13-2-19306-0 SEA) (certifying class of truck drivers alleging rest break claims), Ex. 2 (*Bickley v. Schneider Nat'l Carriers, Inc.*, N.D. Cal. Case No. C 08-05806 JSW at 12:25 – 13:5) (certifying claims that drivers were not paid for all work and for rest and meal break violations under California law) (hereinafter, "*Bickley*"). In fact, Judge Lasnik certified a similar class action against Knight Transportation, Inc. on behalf of drivers for many of the same wage and hour abuses at issue here. *See Helde v. Knight Transp., Inc.*, C 12-0904 RSL, 2013 WL 5588311 (W.D. Wash. Oct. 9, 2013) (order certifying class of truck drivers alleging Knight took unlawful rebates and deductions through per diem pay plan and payroll cards, and failed to pay drivers for all of the time they work, including non-driving work); *Helde*, 2016 WL 1687961 (W.D. Wash. April 26, 2016) (summary judgment order

---

[1] All numbered exhibits are attached to the Declaration of Erika L. Nusser filed in support of this motion.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

reinstating claim for unpaid rest breaks and finding Knight liable for failing to separately pay rest breaks).

Plaintiffs respectfully request certification of the Class defined above. In addition, Plaintiffs respectfully ask the Court to designate Plaintiffs Sampson and Raymond as Class representatives; appoint Terrell Marshall Law Group PLLC and Rekhi & Wolk, P.S. as Class counsel; and order that notice of the action be provided to the Class.

## II. FACTUAL AND LEGAL BACKGROUND

**A.** **Knight's Dry Van, Refrigerated, and Port Services divisions operate uniformly in Washington.**

Knight is a trucking company in the business of delivering goods throughout the United States, including in Washington. *See* Exs. 3–4; Ex. 5 at DEF0001886. The majority of Knight's employees are the truck drivers who deliver loads to Knight's customers over local and long-haul routes. Ex. 6 at DEF0000583. Knight Transportation, Inc. employs drivers in six divisions, including Dry Van, Refrigerated, Port Services, Brokerage or Logistics, Intermodal, and Dedicated. Ex. 7 at 21:4 – 23:4; Ex. 4. Knight has employed Washington residents as drivers in at least three of those divisions—Dry Van, Refrigerated, and Port Services. *Id*.

Knight Refrigerated and Knight Port Services are wholly-owned subsidiaries of Knight Transportation, Inc. Ex. 8. The three entities process payroll using the same payroll department, use a piece-rate compensation structure for paying drivers, and are overseen by the same Chief Executive Officer, Chief Operations Officer, and Chief Financial Officer. Ex. 7 at 51:24 – 57:13, 190:21 – 191:1.

1. Knight's Washington-based drivers.

Since the start of the proposed Class period, Knight has employed more than 500 drivers in Washington: 278 Dry Van, 44 Refrigerated, and 179 Port drivers. Nusser Decl. ¶ 10.

Knight's Washington-based drivers reside throughout the state, including Bellingham, Vancouver, Longview, Yakima and Spokane, and nearly everywhere in between. *Id*. Knight's Washington-based drivers hold licenses issued by the state of Washington and, per Department of Transportation ("DOT") regulations, such drivers cannot have more than one driver's license

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    at a time. Ex. 9; Ex. 7 at 119:19-22; *see also* 49 C.F.R. § 383.21 ("No person who operates a

2    commercial motor vehicle shall at any time have more than one driver's license."). In addition,

3    Knight identifies its Washington resident drivers and pays Washington-specific taxes for those

4    drivers in all divisions. Ex. 7 at 93:13 – 94:18; *see also* Exs. 10 – 11. Indeed, the State of

5    Washington requires Knight to pay workers' compensation for all of its Washington resident

6    drivers pursuant to an audit by the Washington Department of Labor and Industries. Ex. 7 at

7    93:13 – 94:18; *see also* Exs. 10 – 11.

8          Knight's Washington-based drivers begin and end their routes in states all over the

9    country, including Washington. Ex. 12 at 23:24 – 24:17; Ex. 13 at 48:16-25, 74:1 – 75:15; Ex.

10   14; *see also* Declaration of Dennis Adams (Adams Decl.) ¶ 4; Declaration of David Anderson

11   (Anderson Decl.) ¶ 4; Declaration of Donald Anderson (D. Anderson Decl.) ¶ 4; Declaration of

12   Mikel Byram (Byram Decl.) ¶¶ 5–6; Declaration of Teotimo Carreon (Carreon Decl.) ¶ 4;

13   Declaration of Richard Christensen (Christensen Decl.) ¶ 4; Declaration of Adam Conley

14   (Conley Decl.) ¶ 4; Declaration of Clinton Cunningham (Cunningham Decl.) ¶ 4; Declaration

15   of Jerome Cunningham (J. Cunningham Decl.) ¶ 4; Declaration of Gregory Fyhr (Fyhr Decl.) ¶

16   4; Declaration of Michael Hoffarth (Hoffarth Decl.) ¶ 4; Declaration of Scott Liles (Liles Decl.)

17   ¶ 4; Declaration of Richard Stevens (Stevens Decl.) ¶ 3; Declaration of Donald E. Talen III

18   (Talen Decl.) ¶ 4; Declaration of Shawn Tipton (Tipton Decl.) ¶ 3.

19          2.      Knight's uniform policies and practices.

20          The only differences between drivers in Knight's Dry Van, Refrigerated, and Port

21   Services divisions are the types of trucks and trailers they drive, and the color of the logos on

22   their trucks and paychecks. *Id.* at Ex. 7 at 173:7 – 174:2, 188:5 – 191:1; *see also* Ex. 13 at

23   32:14 – 34:3; Ex. 3. Dry Van and Refrigerated drivers haul goods for Knight throughout the

24   country, whereas Port Services drivers deliver primarily in and around Washington. *See* Adams

25   Decl. ¶ 4; D. Anderson Decl. ¶ 4; Byram Decl. ¶ 6; Carreon Decl. ¶ 4; Christensen Decl. ¶ 4;

26   Conley Decl. ¶ 4; Cunningham Decl. ¶ 4; J. Cunningham Decl. ¶ 4; Liles Decl. ¶ 4; Stevens

27   Decl. ¶ 3; Tipton Decl. ¶ 3; *compared with* Anderson Decl. ¶ 4; Byram Decl. ¶ 5; Hoffarth

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  Decl. ¶ 4; Talen Decl. ¶ 4. Dry Van, Refrigerated, and Port Services drivers are all required to
2  comply with federal Hours of Service regulations, including by classifying their status in one of
3  the four DOT statuses such as Driving, Off Duty, Sleeper, and On Duty Not Driving. Ex. 7 at
4  36:17 – 37:1; Ex. 15 at 96:15 – 97:11; Ex. 17 at 78:4-8.

5       Knight has uniform wage and hour policies and practices that apply to all Washington
6  drivers in all divisions. Knight's written policies are set forth in a single employee handbook.
7  Ex. 18 at DEF0000141; *see also* Ex. 15 at 93:9 – 94:7; Ex. 17 at 124:19 – 125:12. Knight trains
8  all drivers on its policies in an orientation or Driver Qualification Program ("DQP") that is
9  generally the same for drivers across all divisions, with additional information on the driver's
10 specific division, such as the names of their mangers and differences in equipment. Ex. 7 at
11 98:2-23, 100:12-24; Ex. 15 at 77:11 – 78:19, 88:24 – 89:8, 90:3-18; 96:20 – 99:23; and 169:19
12 – 170:13 (testifying about Ex. 19 that the "same subjects and topics" were covered in the
13 orientation for Port Services drivers); Ex. 17 at 34:22 – 35:13.

14      3.    <u>Knight pays all Washington drivers on a piece-rate basis.</u>

15      During the Class period, Knight has paid its drivers uniformly, primarily on a piece-rate
16 basis. Ex. 20 at 134:11-13, 134:16-19; *see also* Exs. 6 and 21. Knight pays Dry Van and
17 Refrigerated drivers primarily on a per-mile basis. Ex. 7 at 29:1 – 31:23; Ex. 15 at 33:20 –
18 35:11; Ex. 17 at 25:18-22. Knight pays Port Services drivers primarily on a per-trip basis,
19 called "load pay," which is a flat dollar amount for each roundtrip delivery based in part on the
20 mileage of the trip. Ex. 15 at 33:20 – 37:12, 44:23-25. In addition to mileage or load pay,
21 Knight also pays drivers piece rates for certain other activities, such as loading, unloading, and
22 detention, or for a 24-hour layover. Ex. 7 at 30:17 – 31:20; Ex. 15 at 37:13 – 41:13; Ex. 17 at
23 29:21-30:13, 46:23 – 47:2, 55:6-9.

24      Knight processes payroll for drivers in all divisions in Knight's corporate offices. Ex. 7
25 at 26:6-14; *see also* Ex. 15 at 10:11-16; Ex. 17 at 82:16 – 83:6.

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**B.    Knight systematically violates Washington's wage and hour laws.**

1.    <u>Knight failed to pay Class members for rest breaks for part of the Class period.</u>

Under Washington law, employees are entitled to "a rest period of not less than ten minutes, on the employer's time, for each four hours of working time." WAC 296-126-092(4). The Washington Supreme Court has held that rest breaks are "hours worked" and must be paid. *Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr.*, 175 Wn.2d. 822, 831-32, 287 P.3d 516 (2012). The phrase "on the employer's time" means "the employer is responsible for paying the employee for the time spent on a rest period." *Pellino v. Brink's Inc.*, 164 Wn. App. 668, 689, 267 P.3d 383 (2011) (quoting Wash. Dep't of Labor & Indus. (DLI) Admin. Policy ES.C.6 § 10). When employees work on a piece-rate basis, their "employers <u>must</u> pay [them] for rest breaks separate and apart from the piece rate." *Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wn.2d 649, 653, 355 P.3d 258 (2015) (emphasis added). Furthermore, the overtime provisions of RCW 49.46.130(1) are triggered when the additional 10 minutes of working time extends the employee's workweek beyond 40 hours. *Wash. State. Nurses Ass'n v. Sacred Med. Center*, 175 Wn.2d 822, 832, 287 P.3d 516 (2012).

Knight admits that the company did not compensate drivers for rest breaks until November 11, 2016. Nusser Decl. ¶ 24, Ex. 22; *see also* Ex. 20 at 182:1–19 ("Q.  So there's no separate compensation for a rest break; is that correct?  A.  That's correct."); Ex. 7 at 39:16 – 40:1, 40:18 – 42:2 (confirming testimony from 2012, that there was no separate compensation for rest breaks until late 2016); Ex. 17 at 23:22 – 24:4, 110:17 – 112:22; Ex. 23 (disclosing on paystub that Knight did not provide separate compensation for rest breaks); Ex. 24. Indeed, on April 26, 2016, Judge Lasnik granted partial summary judgment for the certified class in the *Helde* Action, holding that Knight Transportation, Inc. was liable for failing to separately compensate its driver employees for rest break time. *See Helde*, 2016 WL 1687961. From the start of the Class period until November 11, 2016, Knight did not compensate Washington drivers for rest breaks, whether received or not. *See* Nusser Decl. ¶¶ 24, Ex. 22; Ex. 20 at

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

182:1–19; Ex. 7 at 39:16 – 40:1, 40:18 – 42:2; Ex. 17 at 23:22 – 24:4, 110:17 – 112:22; Ex. 23; Ex. 24. This is a uniform violation of Washington law.

    2.   <u>Knight fails to pay minimum wages to Class members for attending its orientation program.</u>

Under Washington law, all non-exempt employees are required to be paid at or above the applicable minimum wage rate for all hours worked. RCW 49.46.020; RCW 49.12.150. "Hours worked" means "all work requested, suffered, permitted, or allowed" and includes "training and meeting time." Ex. 25 (Wash. Dept. of Labor & Indus. Admin. Policy ES.C.2 at 1, 5 (Sept. 2, 2008)). The Washington Supreme Court has concluded that time spent in mandatory pre-employment orientation is compensable work. *SPEEA v. Boeing Co.*, 139 Wn.2d 824, 836, 991 P.2d 1126 (2000) (finding "the trial court correctly ruled the mandatory pre-employment orientation sessions were work").

As a condition of employment, Knight requires all drivers in all divisions to participate in the same mandatory orientation program or DQP. Ex. 7 at 98:2 – 99:9, 106:3-7, 111:20 – 112:21, 113:11-21; Ex. 15 at 77:11 – 78:19, 88:24 – 89:8, 90:3-18, 96:20 – 99:23, 169:19 – 170:13 (testifying about Ex. 19 that the "same subjects and topics" were covered in the orientation for Port Services); Ex. 17 at 68:20 – 69:6; Ex. 18 at DEF0000141; *see also* Ex. 20 at 56:17 – 57:5, 57:8 – 58:2, 64:11-14, 73:15 – 74:1. Indeed, Knight does not allow drivers to attend an orientation at another company and then drive for Knight without attending Knight's orientation program. Ex. 7 at 98:2 – 99:9; Ex. 15 at 88:24 – 89:8; Ex. 17 at 64:5 – 65:5; *see also* Ex. 20 at 73:15 – 74:1. The overall program has been the same throughout the entire proposed class period. Ex. 15 at 77:11 – 19; Ex. 17 at 123:19 – 124:18; *see also* Ex. 20 at 56:17 – 57:5, 57:8 – 58:2, 64:11-14, 74:2 – 75:13; 75:23 – 76:13; Ex. 26 at 43:5–44:1.

A substantial component of Knight's orientation program is "classroom" time. The topics covered in this portion have not varied much but have over the years been reviewed online or in a classroom. Ex. 7 at 99:19 – 101:9, 104:9 – 106:7, 114:9-23; Ex. 15 at 88:24 – 89:8, 90:3-18, 93:9-19; Ex. 17 at 125:19 – 127:4; Ex. 20 at 68:21 – 70:19, 74:2 – 75:13. The

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1 | topics are specific to Knight's operations and include a discussion of the company's policies
2 | and procedures, the company's expectations of drivers, payroll processes, and procedures for
3 | recording hours of service and other aspects of work. *See, e.g.,* Exs. 3, 5, 16, 18, 35, 37, and 38.

4 | In total, Knight's mandatory orientation program lasts two-and-a-half to three days, and
5 | for a total of approximately 17 to 21 hours in total. Ex. 7 at 102:4-22.

6 | Knight admits that it did not pay minimum wage to Plaintiffs for attending Knight's
7 | orientation program. Ex. 7 at 101:17-18, 148:3-17 (testifying drivers are now paid $150 for
8 | orientation and had previously been paid $100); Ex. 15 at 88:3-13; Ex. 17 at 34:22 – 38:5; Ex.
9 | 20 at 88:6 – 89:6 (testifying drivers were paid a $50 "stipend" for orientation). Instead, Knight
10 | only pays drivers $50 to $150 (less FICA taxes) for an orientation program that lasts 17 to 21
11 | hours. Ex. 7 at 102:4-22, 101:17-18, 148:3-17; Ex. 27; Ex. 20 at 88:6 – 89:6; *see also* Ex. 26 at
12 | 15:5–10, 19:17–20:13, 26:7–24, 27:7–17. Washington's minimum wage rate during the class
13 | period ranged from $9.19 in 2013 to $11.50 at present. *See* RCW 49.46.020(4)(b); *and see* Ex.
14 | 28. At the applicable minimum wage rate in 2013, $50 would have covered just over five-and-a
15 | half hours of a driver's participation in Knight's 17 to 21-hour long, mandatory orientation
16 | program. At the current rate, $150 still falls short of covering Knight's orientation program by
17 | more than three hours. Not surprisingly, a court in Oregon held that "Knight's Orientation
18 | training program constitute[s] work time and is subject to Oregon's minimum wage
19 | requirements." Ex. 29 at 2 (*Griffus*); *see also Helde*, 2013 WL 5588311, at *3 (finding that
20 | "whether plaintiffs were employed for some or all of the time in which they participated in the
21 | mandatory orientation can be decided on a classwide basis").

22 | Plaintiffs Sampson and Raymond both attended Knight's mandatory orientation
23 | program, and Plaintiffs and Class members all had the same experience. Ex. 12 at 12:8 – 16:7;
24 | Ex. 13 at 28:11 – 30:23; Adams Decl. ¶ 5; Anderson Decl. ¶ 5; D. Anderson Decl. ¶ 5; Byram
25 | Decl. ¶ 7; Carreon Decl. ¶ 5; Christensen Decl. ¶ 5; Conley Decl. ¶ 5; Cunningham Decl. ¶ 5; J.
26 | Cunningham Decl. ¶ 5; Fyhr Decl. ¶ 5; Hoffarth Decl. ¶ 5; Liles Decl. ¶ 5; Stevens Decl. ¶ 4;
27 | Talen Decl. ¶ 5.

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION – 8
CASE NO. 2:17-cv-00028-JCC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

In short, Knight has been violating Washington law by failing to pay minimum wages to Plaintiffs and Class members for time spent attending mandatory orientation.

> 3. <u>Knight fails to provide compensation reasonably equivalent to overtime pay to Class members who work more than 40 hours in a week.</u>

Under Washington law, "no employer shall employ any… employees for a work week longer than forty hours unless such employee receives compensation … in excess of the hours above specified at a rate of not less than one and one-half times the regular rate…." RCW 49.46.130. One exemption from this rule applies to any interstate truck driver who is subject to the Federal Motor Carrier Act (49 U.S.C. § 3101 *et seq.*), so long as "the compensation system under which the truck … driver is paid includes overtime pay, reasonably equivalent to that required by [RCW 49.46.130], for working longer than forty hours per week." RCW 49.46.130(f); *see also* WAC 296-128-012.

Knight fails to compensate Washington-based drivers in accordance with the formula set forth in WAC 296-128-012(1)(a). Ex. 6. Indeed, the mileage-based compensation system that Knight has used since 1989 does not provide for any additional compensation when a driver works more than 40 hours in a week. Ex. 20 at 134:11-13, 134:16-24 ("Q. Does that mileage rate change at all if drivers drive for more than 40 hours a week? A. No, it doesn't."); Ex. 21; Ex. 7 at 161:3-6 (confirming Knight still does not pay overtime); Ex. 15 at 106:24 – 108:2; Ex. 17 at 48:17-23, 55:1-5. Knight's compensation system is uniformly applied to Washington drivers and is primarily based on a standard per-mile or per-load rate, regardless of the number of hours worked. Ex. 30; Ex. 15 at 43:4-16; Ex. 17 at 55:1-5; Ex. 20 at 134:11-13, 134:16-24; *see also* Exs. 6 and 21. Knight fails to even keep track of the hours each driver works during a given day or workweek for purposes of payroll, which is a violation of Washington law.[2] Ex. 6; *see also* WAC 296-128-010 ("employers shall be required to keep and

---

[2] Because DOT requires line-haul drivers to log their work hours, all data necessary to calculate the overtime compensation owed to Class members is available in Knight's own records. Plaintiffs intend to calculate damages by using this data to compare what drivers were actually paid to what drivers would have earned if they were paid on an hourly basis, including overtime for hours worked over 40 per week. *See Mendis*, 2016 WL 6650992, at *7 (W.D. Wash. Nov. 10, 2016); *Mendis*, 2017 WL 497600, at *4 (W.D. Wash. Feb. 7, 2017). To the extent Knight's

preserve payroll or other records containing … [h]ours worked each workday and total hours worked each workweek")[3]; *and see* WAC 296-128-011.[4] In fact, Knight still fails to keep track of the hours each driver works even after Judge Lasnik ruled in 2014 that Knight's failure to do so violates Washington law, including WAC 296-126-050, 296-128-010(6), and 296-128-020. *Helde*, 2014 WL 11958636, at *2 (holding that plaintiffs were entitled to the burden shifting analysis of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1964)").

Plaintiffs and other drivers testify that Knight regularly required them to work more than 40 hours a week but never paid them any overtime compensation. *See* Dkt. No. 38 (First Amended Complaint) ¶¶ 1, 27–28; Adams Decl. ¶ 7; Anderson Decl. ¶ 7; D. Anderson Decl. ¶ 7; Byram Decl. ¶ 10; Carreon Decl. ¶ 7; Christensen Decl. ¶ 8; Conley Decl. ¶ 7; J. Cunningham Decl. ¶ 7; Hoffarth Decl. ¶ 7; Liles Decl. ¶ 9; Stevens Decl. ¶ 7; Talen Decl. ¶ 7; Tipton Decl. ¶ 5. For example, current Knight employee Donald Anderson states "there are times when I work seven days a week for approximately eight to 10 hours each day. Despite such long hours, Knight never pays any overtime compensation to me." D. Anderson Decl. ¶ 7. Mikel Byram states "[d]uring my employment with Knight Port and Knight, I have worked more than 40 hours a week on a regular basis. In fact, there were times when I have worked 5 days a week for more than 10 hours each day. Despite such long hours, Knight Port and Knight have never paid any overtime compensation to me." Byram Decl. ¶ 10.

Knight's piece rate compensation system is uniform to all Washington-based drivers. This court has previously found that such a system may not provide compensation that is reasonably equivalent to Washington's overtime provision. *See Mendis*, 2016 WL 6650992, at *7 (denying employer's motion for summary judgment on drivers' overtime claim finding

---

data is incomplete for any Class member or does not extend back to the beginning of the Class period, Plaintiffs will use available data to extrapolate the total amount of overtime compensation owed to the Class. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (where employer has failed to keep records, employees may prove wages owed "as a matter of just and reasonable inference").

[3] *See also* WAC 296-128-020 (requiring records to be kept for at least three years); WAC 296-126-050 (same).

[4] *See also* RCW 49.46.040(3) ("[e]very employer . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment").

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

employer's mileage-based compensation structure may not provide compensation reasonably equivalent to what drivers would be paid hourly, including overtime); *Mendis*, 2017 WL 497600, at *4 (granting plaintiffs' motion for class certification finding whether employer's mileage-based compensation system provided the reasonable equivalence to overtime compensation is a common question). Plaintiffs will establish that Knight's mileage-based compensation system fails to provide the reasonable equivalent to overtime in violation of RCW 49.46.130 and WAC 296-128-012.[5]

   4.   <u>Knight unlawfully deducted $0.02 per mile from the wages of Class members pursuant to its per diem program for part of the Class period.</u>

Under Washington law, an employer may make deductions to an employee's wages only in limited circumstances. *See* WAC 296-126-028. Aside from deductions required by law or for medical care, "an employer may deduct [from] wages [only] when the employee expressly authorizes the deduction in writing and in advance for a lawful purpose for the benefit of the employee." WAC 296-126-028(2); *see also* RCW 49.52.060. Employers likewise may not "collect or receive from any employee a rebate of any part of wages…." RCW 49.52.050(1). If an employer takes a deduction or rebate from employee wages, "[n]either the employer nor any person acting in the interest of the employer can derive any financial profit or benefit from any of the deductions" made. WAC 296-126-028(3); *see also* RCW 49.52.060 (to be lawful, a rebate must be authorized in writing in advance, for a lawful purpose, and must

---

[5] Knight submitted information to DLI for a determination as to its compliance with the reasonable equivalency requirement. DLI found the information to be inadequate, however, and DLI sought more information from the company, including a description of Knight's payroll system, raw payroll records, and comparison spreadsheets showing what drivers would have earned based on traditional overtime calculations. *See* Exs. 31 and 32; *see also* Ex. 33. Knight failed to provide this information. DLI eventually asked Knight to conduct a self-audit because DLI did not have the resources to make a determination on this issue. Ex. 34. Knight never conducted such an audit. *See* Ex. 27. In *Helde*, Knight moved for summary judgment on plaintiffs' overtime claims, which Judge Lasnik granted before considering plaintiffs' motion for class certification. *Helde*, 2013 WL 5588311, n.1. Judge Lasnik dismissed the overtime claim based in large part on Knight's representation that it paid $12 per hour to local drivers. *Helde*, 982 F. Supp. 2d at 1202. The evidence in this case will show that on the rare occasion when Knight pays drivers hourly, the rate is "usually much more" than $12 per hour. Ex. 17 at 43:13-21. Indeed, when Knight was still incorporating pay for rest breaks into Class members' piece-rate pay, Knight indicated on Class members' paystubs that their hourly rate for rest break pay was anywhere from $11.20 to $37.33. *See* Nusser Decl. ¶ 26, Exs. 23 – 24. Moreover, Knight has not moved for summary judgment in this case and whether Knight's piece rate compensation system provided the reasonable equivalence to overtime compensation is a common question.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1 "accru[e] to the benefit of [the] employee"). "The employer must identify and record all wage

2 deductions openly and clearly in employee payroll records." WAC 296-126-028(5); *see also*

3 RCW 49.52.060; WAC 296-128-010(9).[6]

4     As part of its mileage-based compensation program for Dry Van and Refrigerated

5 drivers, Knight created a "Per Diem Pay" program whereby a portion of a driver's mileage rate

6 was converted to a per diem payment. Ex. 18 at DEF0000213 – 220. For example, if a driver's

7 pay rate was normally $0.38 per mile, Knight split the rate into two components that add up to

8 $0.36 per mile: (1) a payment of $0.24 per mile that was taxed as wages, and (2) a payment of

9 $0.12 per mile that was not taxed as wages. Ex. 35; Ex. 18 at DEF0000213–220; Ex. 36 at

10 118:17 – 122:15; Ex. 37. Thus, Knight deducted $0.02 per mile from the driver's "Mileage Pay

11 Rate." Ex. 35. Pursuant to its Per Diem program, Knight made a deduction of $0.02 per mile so

12 that the actual compensation paid to the driver was only $0.33 per mile. Ex. 18 at DEF0000213

13 – 220. This practice was uniform for all drivers enrolled in the program. *Id*.

14     Knight admits that it benefitted from this $0.02-per-mile deduction. Ex. 38 at

15 DEF0002102 – 2108; *see also* Ex. 26 at 80:21–81:18 (Knight takes the $0.02 per mile to pay

16 "administrative costs, processing for the IRS, business expense to provide the service"). As

17 Knight explained to drivers in response to the question, "Why does the company <u>take $.02 from</u>

18 <u>my pay</u> on the per diem plan?":

19         The Internal Revenue Code disallows 25% of any deductions for
           expenses on meals and entertainment.   Per diem is included in that
20         category….   Per Diem <u>wages</u> are only 75% tax deductible for the
           company <u>so the 2 cents helps to cover the company from losing tax</u>
21         <u>money</u>.

22 Ex. 38 at DEF0002107 (emphasis added). In its Payroll Information for Driving Associates,

23 Knight added: "[m]ileage pay will be reduced $.10 per mile <u>to offset</u> the per diem and <u>lost tax</u>

24

25 _____

26 [6] The statutes and regulations cited apply to deductions made "[d]uring an on-going employment relationship."
WAC 296-126-028(1). There are similar provisions for deductions made to an employee's final paycheck. *See*
27 RCW 49.48.010; WAC 296-126-025.

benefits to the company" and $0.08 will be "reimbursed" as non-taxable income.[7] Ex. 18 at DEF0000213–220 (emphasis added). Knight also benefitted from substantial reductions to its FICA contributions, which the company did not have to pay on the "per diem" portion of a driver's pay. Ex. 38 at DEF0002107.

When Plaintiff Raymond was paid per-mile, he received his mileage-based compensation pursuant to Knight's per diem program and Knight deducted $0.02 from his pay for every mile. *See* Ex. 13 at 61:9 – 65:8; *see also* Adams Decl. ¶ 9; Christensen Decl. ¶ 10; Conley Decl. ¶ 9; Fyhr Decl. ¶ 10; Liles Decl. ¶ 11; Stevens Decl. ¶ 9; Talen Decl. ¶ 9.

Because the deductions Knight made to driver compensation as part of its per diem program financially benefitted the company, Knight violated the law. Ex. 18 at DEF0000213 – 220; Ex. 38 at DEF0002102 – 2108; *see also* WAC 296-126-028(2); RCW 49.52.060. On January 4, 2016, Knight ended its per diem program for its Washington-based drivers citing "Washington regulations" as the basis for ending the unlawful program. Ex. 39.

> 5. <u>Knight has uniformly failed to compensate Class members for most if not all of their non-driving work.</u>

As noted above, Washington law requires employers to compensate employees for all hours worked. *See* RCW 49.46.020; RCW 49.12.150. Under WAC 296-126-020, an employer must pay its employees "a rate of pay <u>per hour</u> which is equal to the hourly rate required by RCW 49.46.020 . . . except as otherwise provided under this chapter." (Emphasis added.) One general exception to the minimum-wage-per-hour requirement applies when employees are performing production or piecework. Employees may be paid something less than the minimum wage for each hour of production work so long as the total wages for the workweek are at least the minimum wage multiplied by the number of hours worked. WAC 296-126-021.

When the work an employee performs during a given week is comprised of a mix of production and non-production work, the employee must be paid at least the minimum wage

---

[7] During the Class period, Knight increased the per diem reduction from $0.10 to $0.14 and the reimbursed portion from $0.08 to $0.12. The deduction has always remained at $0.02. *Compare* Ex. 18 at DEF0000216, *with* Ex. 37 *and* Ex. 35.

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION – 13
CASE NO. 2:17-cv-00028-JCC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1 per hour for each hour of non-production work. *See* WAC 296-126-020 & -021. This is because

2 the piecework exception found in WAC 296-126-021 only applies to work performed "on such

3 basis"—that is, work performed on a production basis. The compensation for time spent

4 performing production work is "credited as <u>part</u> of the total wage" for that week, which means

5 that each hour spent performing non-production work must be compensated separately at the

6 minimum wage rate or higher. WAC 296-126-021 (emphasis added); WAC 296-126-020

7 (employees are entitled to be paid at least minimum wage "per hour").

8      Knight uniformly fails to pay drivers for non-production time, which is logged as either

9 "on duty, not driving" or "off duty." Instead, Knight only pays its drivers on a per mile or per

10 load basis because if the wheels are not moving, the truck is not "productive." Ex. 20 at 205:8-

11 12. Knight does not pay drivers for time spent working while their truck is stopped, which is

12 usually an additional two to three hours per day. Adams Decl. ¶ 6; Anderson Decl. ¶ 6; D.

13 Anderson Decl. ¶ 6; Byram Decl. ¶¶ 8–9; Carreon Decl. ¶ 6; Christensen Decl. ¶ 7; Conley

14 Decl. ¶ 6; J. Cunningham Decl. ¶ 6; Fyhr Decl. ¶ 7; Hoffarth Decl. ¶ 6; Liles Decl. ¶ 8; Stevens

15 Decl. ¶ 6; Talen Decl. ¶ 6; Tipton Decl. ¶ 4.

16      Knight's piece rate compensation system is uniform to all Washington drivers and

17 results in drivers working a significant amount of time for which they are not compensated. At

18 a minimum, Knight's piece rate compensation system does not compensate drivers at the

19 minimum wage rate for all hours worked, including non-production time logged as "on duty,

20 not driving" or "off duty." *See Helde*, 2013 WL 5588311, at *3 (finding "whether defendant

21 hired drivers based on a compensation system that combined dispatch miles and extra duty

22 payments and whether that system uniformly results in pay that is no less than the equivalent of

23 the minimum wage rate for each hour of work can be determined on a classwide basis").

24 ### III. ARGUMENT AND AUTHORITY

25 **A.   Plaintiffs satisfy the class certification requirements under Rule 23(a).**

26      The four prerequisites to class certification are numerosity, commonality, typicality, and

27 adequacy of representation. Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

338, 346 (2011). In addition, one of the three conditions of Rule 23(b) must be met. Fed. R.

Civ. P. 23(b); *see also Dukes*, 564 U.S. at 346. Here, Plaintiffs seek certification under

Rule 23(b)(3), which requires a finding that questions of law or fact common to class members

predominate over any questions affecting only the individual members, and that a class action

is superior to other available methods for the fair and efficient adjudication of the controversy.

"Any doubts regarding the propriety of class certification generally should be resolved

in favor of certification." *Zeisel v. Diamond Foods, Inc*., No. C 10-01192 JSW, 2011 WL

2221113, at *10 (N.D. Cal. June 7, 2011) (quoting *Gonzales v. Arrow Fin. Servs.*, LLC, 489 F.

Supp. 2d 1140, 1154 (S.D. Cal. 2007)). Although "this inquiry may 'entail some overlap with

the merits of plaintiffs underlying claim[,] … the Court considers the merits only to the extent

that they overlap with the requirements of Rule 23 and allow the Court to determine the

certification issue on an informed basis." *Toering v. EAN Holdings, LLC*, No. C 15-2016 JCC,

2016 WL 4765850, at *2 (W.D. Wash. Sept. 13, 2016) (quoting *Ellis v. Costco Wholesale

Corp.*, 657 F.3d 970,981 (9th Cir. 2011)); *see also United Steel, Paper & Forestry, Rubber,

Mfg. Energy, Allied Indus. & Serv. Workers Intern. Union AFL-CIO, CLC  v. Conoco Phillips

Co.*, 593 F.3d 802, 808–09 (9th Cir. 2010) ("[t]he court may not go so far … as to judge the

validity of [the plaintiffs'] claims") (internal marks omitted; quoting *Staton v. Boeing Co.*, 327

F.3d 938, 954 (9th Cir. 2003)). Ultimately, the district court has broad discretion to certify a

class. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

As demonstrated below, Plaintiffs satisfy all the requirements of Rule 23(a) and (b)(3),

and certification of the proposed Class is appropriate. Indeed, courts have repeatedly certified

for class or collective action treatment claims involving Washington wage and hour violations

similar to or the same as the violations alleged here. *See Toering*, 2016 WL 4765850, at *3, *5

(certifying minimum wage violations, noting such violations are "well suited for class-wide

disposition"); *Pellino*, 164 Wn. App. at 682–84 (affirming certification of rest break claims on

behalf of drivers of armored truck corporation); Ex. 27 (*Kirkpatrick v. Ironwood Commcn's.*,

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION – 15
CASE NO. 2:17-CV-00028-JCC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Inc.*, No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006)) and Ex. 28

(*Kirkpatrick v. Ironwood Commcn's., Inc.*, No. C05-1428JLR (W.D. Wash. Nov. 1, 2006)).

1. <u>Plaintiffs satisfy the numerosity requirement.</u>

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Often, the number of class members by itself is sufficient to establish the impracticability of joining them as plaintiffs." *Kirkpatrick*, 2006 WL 2381797 at *3 (citing *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds by* 459 U.S. 810 (1982)). Numerosity has been held presumptively satisfied when a proposed class comprises forty or more members. *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673–74 (W.D. Wash. 2010). "In addition to the number of potential class members, the Court may consider 'the geographic diversity of class members, [and] the ability of individual claimants to institute separate suits….'" *Gonzalez v. U.S. Dept. of Homeland Sec.*, 239 F.R.D. 620, 628 (W.D. Wash. 2006), *vacated on other grounds*, 508 F.3d 1227 (9th Cir. 2007).

Here, the Class consists of more than 500 current and former Washington-based drivers of Knight. Nusser Decl. ¶ 10. The Class members are dispersed throughout Washington State and are unlikely to have the resources to sue individually. *Id.*; *see also* Exs. 6 and 18 (drivers are paid just cents per mile); Ex. 15 at 37:6-12 (Port drivers are paid a flat rate per load); Ex. 13 at 85:3 – 87:1 (testifying there were times he would wait 8 hours without receiving a load and be paid just $75 for the day). For these reasons, Plaintiffs satisfy the numerosity requirement.

2. <u>There are numerous common questions of law and fact.</u>

Rule 23(a)(2) requires that common questions of law or fact exist among class members. To satisfy this element, "a plaintiff must demonstrate that the 'class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Toering*, 2016 WL 4765850, 3 (quoting *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012), and *Dukes*, 564 U.S. at 349-50). In other words, "[w]hat matters to class certification is not the

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

raising of common 'questions' but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *In re Wash. Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011) (internal marks and citation omitted). It is not necessary that members of the proposed class "share every fact in common or completely identical legal issues." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2009). To the contrary, "all Rule 23(a)(2) requires is 'a single significant question of law or fact.'" *Toering*, 2016 WL 4765850, at *3 (citing *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)). The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988).

"[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the prerequisites for class certification[]," including commonality. *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 355 (E.D.N.Y. 2011). This is because the glue holding together such claims is the common question of whether an unlawful wage policy prevented employees from collecting lawfully earned wages. *Id.*

Indeed, numerous courts have found class treatment appropriate in similar cases brought on behalf of truck drivers who allege wage and hour abuses similar to those suffered by Plaintiffs and Class members in this case. *See Mendis*, 2017 WL 497600 (certifying wage and hour class action on behalf of truck drivers); *Mendez*, 2012 WL 5868973 (same); *Helde*, 2013 WL 5588311 (same); *Helde*, 2016 WL 1687961 (same).

Knight's systematic practice of wage and hour abuses presents numerous common factual and legal issues, including:

- Whether Knight was obligated under Washington law to compensate Class members for rest breaks;

- Whether Knight is obligated to pay minimum wages to Class members for time spent during Knight's mandatory orientation and training program;

- Whether Knight is obligated to pay overtime compensation to Class members;

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

- Whether Knight's per diem program resulted in deductions from the wages of Class members who were enrolled in the program;

- Whether Knight obtained a financial benefit from the wage deductions that it took from drivers through its per diem program;

- Whether Knight has a pattern and practice of taking unlawful deductions and rebates from the wages of Class members; and

- Whether Knight is obligated to compensate Class members for non-driving work.

Due to the numerous common questions of law and fact among the proposed class, the commonality requirement is satisfied.

3.     The Named Plaintiffs' claims are typical of the Class claims.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct.'" *Toering*, 2016 WL 4765850 (quoting *Ellis*, 657 F.3d at 984). "The Ninth Circuit does not require the named plaintiff's injuries to be identical with those of the other class members, but only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." *Hanon*, 976 F.2d at 666 (quotation and internal marks omitted).

Plaintiffs' claims are typical of the claims of other Class members because they arise from the same conduct of Knight—systematic violations of Washington wage and hour law— and are based on the same legal theories, namely systematic violations of Washington's wage and hours laws on paying for mandatory rest breaks, paying for all work, paying overtime compensation, and paying all earned wages. *See* Sections II.B.1-5, *supra*. For these reasons, the typicality element is satisfied.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Before certifying the class, the Court must find the named Plaintiffs and their counsel will adequately represent the Class. Fed. R. Civ. P. 23(a)(4) & (g)(1). This inquiry requires the Court to determine (1) whether the named plaintiff and his counsel have any conflicts of interest with other class members; and (2) whether the named plaintiff and his counsel will prosecute the action vigorously on behalf of the class. *Toering*, 2016 WL 4765850, at *4. With respect to the adequacy of counsel, the Court considers the work counsel have done to investigate the claims of the proposed Class, counsel's experience in handling complex cases and litigating wage and hour issues, counsel's knowledge of applicable law, and the resources counsel will commit to representing the Class. Fed. R. Civ. P. 23(g)(1)(C).

The named Plaintiffs' claims against Knight are coextensive with, and not antagonistic to, the claims asserted on behalf of the Class. Indeed, the named Plaintiffs and Class members have suffered the same injuries: they were not paid for their statutorily mandated rest breaks for part of the Class period; they have not been compensated for all of their work; they have not received compensation reasonably equivalent to overtime when they have worked more than 40 hours in a week; and Knight took unlawful deductions from their wages for part of the Class period. Plaintiffs seek to hold Knight responsible for its systematic course of wage and hour abuses. The named Plaintiffs are committed to prosecuting this action vigorously on behalf of the Class, have agreed to participate fully in the litigation, and have already devoted efforts to that end. *See* Nusser Decl. ¶ 42. Among other things, the named Plaintiffs have responded to discovery requests, sat for their depositions and are prepared to testify at trial. *Id.*

In addition, Plaintiffs have retained competent and capable trial lawyers with significant experience in complex litigation, including employment law. *See* Nusser Decl. ¶¶ 43 – 47; Declaration of Hardeep S. Rekhi in support of Plaintiffs' Motion for Class Certification (Rekhi Decl.) ¶¶ 2 – 10. The attorneys representing Plaintiffs have been appointed as class counsel in several wage and hour actions involving the same laws and regulations at issue here, including a previous class action against Knight Transportation, Inc. for the same conduct alleged by

1 Plaintiffs in this case. *See* Nusser Decl. ¶¶ 46 – 47; Rekhi Decl. ¶¶ 2–10. They have

2 successfully litigated these cases in both state and federal courts on behalf of tens of thousands

3 of employees. *See id.* In this case, Plaintiffs' counsel have worked extensively to investigate the

4 claims, are dedicated to prosecuting the claims of the Class, and have the resources to do so.

5 *See* Nusser Decl. ¶ 51; Rekhi Decl. ¶ 11. Accordingly, the adequacy requirement is satisfied.

6 **B.      Plaintiffs meet the requirements for certification under Rule 23(b)(3).**

7 In addition to meeting the requirements of Rule 23(a), a class action must also satisfy

8 one of the subdivisions of Rule 23(b). Certification is appropriate under Rule 23(b)(3) if

9 "questions of law or fact common to the members of the class predominate over any questions

10 affecting only individual members, and… a class action is superior to other available methods

11 for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

12       1.      Common factual and legal questions concerning Knight's conduct
              predominate over any individual damages issues.

13 The predominance inquiry concerns whether a proposed class is sufficiently cohesive

14 to warrant adjudication by representation. *Toering*, 2016 WL 4765850, at *4 (citing *Amchem*

15 *Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Common issues "predominate" where a

16 common nucleus of facts and potential legal remedies dominate the litigation. *See Chamberlan*

17 *v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005). The existence of individual issues will

18 not, by itself, defeat certification. *See Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985).

19 Rather, any individual issues must be less significant than the common issues and must not be

20 so unmanageable as to outweigh the benefits of class treatment. In making these

21 determinations, the Court does not decide the merits of any claims or defenses or whether the

22 plaintiff is likely to prevail. "[N]either the possibility that a plaintiff will be unable to prove his

23 allegations, nor the possibility that the later course of the suit might unforeseeably prove the

24 original decision to certify the class wrong, is a basis for declining to certify a class which

25 apparently satisfies [Rule 23]." *United Steel, Paper & Forestry*, 593 F.3d at 809 (citation

26 omitted).

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1    "[N]umerous courts have found that wage claims are especially suited to class

2    litigation—perhaps 'the most perfect questions for class treatment'—despite differences in

3    hours worked, wages paid, and wages due." *Ramos*, 796 F. Supp. 2d at 359 (citing cases).

4         This case is particularly well-suited for class certification because it involves common

5    legal questions regarding the lawfulness of Knight's uniform policies and practices. Plaintiffs

6    allege that Knight failed to properly compensate drivers for their statutorily mandated rest

7    breaks, failed to properly compensate drivers for work performed during orientation, failed to

8    pay drivers compensation reasonably equivalent to overtime when they worked more than 40

9    hours per week, took unlawful deductions from drivers' wages, and failed to pay drivers for

10   non-driving work. Plaintiffs support these allegations with Knight's own policies and

11   procedures, which demonstrate on a class-wide basis that Knight's drivers were doing work for

12   which they were not compensated, and with testimony from similarly situated individuals. As

13   another federal court concluded in a similar class action against a trucking company, "Whether

14   [the employer's] compensation scheme is legal is a question of law which may be determined

15   on a class-wide basis and which predominates over individualized issues." Ex. 1 (*Bickley*).

16        To prevail on their claims for statutory rest period violations, Plaintiffs must

17   demonstrate that Knight engaged in a pattern and practice of failing to pay for mandatory rest

18   breaks in compliance with Washington law. Judge Lasnik has already determined that Knight's

19   mileage-based compensation system failed to separately compensate drivers for rest breaks in

20   violation of Washington law. *See Helde*, 2016 WL 1687961, at *4. Plaintiffs have submitted

21   substantial common evidence demonstrating Knight continued its unlawful conduct until

22   November 11, 2016. *See generally* Section II.B.1, *supra*. As in *Helde*, the common issue that

23   will predominate is whether Knight's policies and practices violated Washington law.

24        The amount of damages to which each member of the Class is entitled must be

25   calculated, but the fact that these damages vary, as in all wage and hour class actions, does not

26   preclude certification. *See Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th

27   Cir. 2016) (affirming district court's holding that difference in damages calculations in wage

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   and hour class action do not defeat predominance). Because common issues predominate over

2   any individualized issues, the predominance requirement is satisfied.

3          2.      Plaintiffs satisfy the superiority requirement.

4          The Court should certify the Class if it finds that a "class action is superior to other

5   available methods for fair and efficient adjudication of the controversy." Fed. R. Civ.

6   P. 23(b)(3). "A class action may be superior if class litigation of common issues will reduce

7   litigation costs and promote greater efficiency, or if no realistic alternative exists." *Connor v.*

8   *Automated Accounts, Inc.*, 202 F.R.D. 265, 271 (E.D. Wash. 2001). A court must, in terms of

9   fairness and efficiency, balance the merits of a class action against those of available alternative

10  methods of adjudication. *See id.* For instance, a class action is appropriate if duplicative

11  lawsuits with potentially inconsistent results would be avoided. *Mortimore v. Fed. Deposit Ins.*

12  *Corp.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000).

13         Given the large numbers of Class members and the multitude of common issues, use of

14  the class device is the most efficient and fair means of adjudicating the claims that arise out of

15  Knight's common scheme of wage and hour abuse against driver employees. Class treatment is

16  superior to multiple individual suits or piecemeal litigation because it conserves judicial

17  resources and promotes consistency and efficiency of adjudication. Additionally, it is likely that

18  most Class members lack the resources necessary to seek individual legal redress for Knight's

19  misconduct and, without class treatment, would have no effective remedy for their injuries. *See*

20  *Amchem Prods.,* 521 U.S. at 620. For these reasons, the superiority requirement is met.

21         3.      This case presents no particular management difficulties.

22         One of the elements that courts use to determine the superiority of a class action in a

23  particular case is manageability. Fed. R. Civ. P. 23(b)(3). Courts, including those in

24  Washington, routinely find that class actions involving wage violations are manageable. *See*

25  *Mendis*, 2017 WL 497600 (certifying wage and hour class action on behalf of truck drivers);

26  *Mendez*, 2012 WL 5868973 (same); *Helde*, 2013 WL 5588311 (same); *Helde*, 2016 WL

27  1687961 (same).

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Plaintiffs' claims can be proven with common evidence taken from or based on Knight's own records and the testimony of similarly situated employees. "Courts commonly allow representative employees to prove violations with respect to all employees." *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994) (citing cases); *see also Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 874–876, 281 P.3d 289 (2012) (approving use of representative evidence for Washington wage claims and citing *Reich* favorably); *Mt. Clemens Pottery Co.*, 328 U.S. at 688 (allowing representative testimony in collective action). All a named plaintiff needs to establish is that the employer engaged in a "pattern or practice" of unlawful conduct. *Donovan v. Bel-Loc Diner*, 780 F.2d 1113, 1116 (4th Cir. 1985), *overruling on other grounds recognized by Pforr v. Food Lion, Inc.*, 851 F.2d 106 (4th Cir. 1988).

Furthermore, courts have long employed class-wide aggregate damage formulas in a variety of contexts, thus obviating the need for individual damage determinations. *See, e.g., Alvarez v. IBP, Inc.*, 339 F.3d 894, 914–15 (9th Cir. 2003), *aff'd*, 126 S. Ct. 514 (2005) (approving an approximated award of class-wide damages); *Olson v. Tesoro*, 2007 WL 2703053, at *6 (W.D. Wash. Sept. 12, 2007) (approving use of representative evidence to address individualized damages issues); *see also* Herbert Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 12.4 (5th ed.) (noting wage and hour cases tend to involve individual damages that are "easily calculable," making a class trial manageable and superior).

Plaintiffs anticipate that most if not all damages will be readily calculable based on Knight's own records. The wages that Knight owes to Plaintiffs and Class members derive from three main categories: (1) hours worked, (2) miles driven, and (3) wage rebates or deductions. Knight has records and electronic data with this information. Ex. 20 at 190:23 – 192:23, 220:14 – 221:18, 246:13-17. Where the records are incomplete due to Knight's failure to keep adequate time records as required by law, Plaintiffs can use statisticians to help extrapolate damage calculations for the entire Class.

This Court likewise will not face any difficulties in managing this case at trial. In determining liability, the focus will be on one distinct point: Knight's conduct. Plaintiffs will be

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

able to establish Knight's common course of wage and hour abuse through the use of representative testimony and Knight's own documents and records, both of which are acceptable methods of proof in cases such as this. Indeed, Plaintiffs submit that several of their claims are susceptible to resolution on summary judgment. For example, Plaintiffs' rest break claims are the same as those brought by the plaintiffs in *Helde*. *See Helde*, 2016 WL 1687961. Likewise, in a similar class action brought against Knight by Oregon-based drivers, the court granted summary judgment to the drivers on orientation pay and unlawful deduction claims. Ex. 29 (*Griffus*).

4. Constitutionally sound notice can be provided to Class members.

To protect the rights of absent Class members, the Court must provide them with the best notice practicable when it certifies a class under Rule 23(b)(3). Fed. R. Civ. P. 23(c)(2). The best practicable notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Knight has already produced a list of all drivers with residences in the state of Washington during the Class period, and this list including each person's last known phone number and mailing address. Nusser Decl. ¶ 52. As a result, notice can be sent directly via First Class mail to all Class members. In addition, notice can be published on a website maintained and updated by Plaintiffs' attorneys. Class members will be able to use the site to stay apprised of important dates and to access the notice form and other key documents. Together, these approaches will provide the best practicable notice to the Class members. If certification is granted, Plaintiffs will submit a detailed notice plan and form to the Court.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court certify the proposed Class pursuant to Rule 23; appoint Plaintiffs Sampson and Raymond as Class representatives; appoint Terrell Marshall Law Group PLLC and Rekhi & Wolk, P.S. as Class counsel; and order that notice of the action be provided to the Class.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

RESPECTFULLY SUBMITTED AND DATED this 30th day of March, 2018.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Erika L. Nusser, WSBA #40854
    Toby J. Marshall, WSBA #32726
    Email: tmarshall@terrellmarshall.com
    Erika L. Nusser, WSBA #40854
    Email: enusser@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    Hardeep S. Rekhi, WSBA #34579
    Email: hardeep@rekhiwolk.com
    Gregory A. Wolk, WSBA #28946
    Email: greg@rekhiwolk.com
    REKHI & WOLK, P.S.
    529 Warren Avenue North, Suite 201
    Seattle, Washington 98109
    Telephone: (206) 388-5887
    Facsimile: (206) 577-3924

    *Attorneys for Plaintiffs*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

<u>CERTIFICATE OF SERVICE</u>

I, Erika L. Nusser, hereby certify that on March 30, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Anthony Todaro, WSBA #30391
Email: anthony.todaro@dlapiper.com
Jeffrey B. DeGroot, WSBA #46839
Email: jeff.degroot@dlapiper.com
Email: patsy.howson@dlapiper.com
DLA PIPER LLP (US)
701 5th Avenue, Suite 7000
Seattle, Washington 98104
Telephone: (206) 839-4800
Facsimile: (206) 839-4801

*Attorneys for Defendants*

DATED this 30th day of March, 2018.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Erika L. Nusser, WSBA #40854
Erika L. Nusser, WSBA #40854
Email: enusser@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiffs*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com