THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALERIE SAMPSON and DAVID RAYMOND, on their own behalf and on the behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>     v.<br><br>KNIGHT TRANSPORTATION INC., an Arizona corporation, KNIGHT REFRIGERATED, LLC, an Arizona limited liability company, and KNIGHT PORT SERVICES, LLC, an Arizona limited liability company,<br><br>             Defendants. | No. 2:17-cv-00028-JCC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**NOTED ON MOTION CALENDAR:**<br>**May 18, 2018** |

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .......................................................................................................... 1

II.  ARGUMENT ................................................................................................................ 2

  A.  Class Certification Standard ............................................................................. 2

    1.  Rule 23(a) ............................................................................................. 2

    2.  Rule 23(b) ............................................................................................. 4

  B.  Plaintiffs' Washington-law Claims Against Transportation And
Refrigerated, Including Their Rest Break Claim, Are Not Properly
Asserted Under Washington Law ..................................................................... 5

  C.  Plaintiffs' On Duty, Not Driving Claim Is Legally Flawed And Not
Suitable For Class Treatment ........................................................................... 7

  D.  Plaintiffs' Per Diem Claim Is Not Suitable For Class Treatment .................... 10

  E.  Plaintiffs' Orientation Claim Contains A Host Of Variables That Do Not
Allow for Class-Wide Adjudication ................................................................. 12

    1.  Driver applicants attended separate orientations for
Transportation, Refrigerated, and Port Services .................................. 12

    2.  Orientation varied in length depending on topics covered and
driver experience .................................................................................. 13

    3.  Orientation pay varied depending on time period and recruiting
promotions ............................................................................................ 14

    4.  The amount of allegedly compensable time varied depending on
the orientation program ....................................................................... 15

    5.  Variations in orientation make class treatment inappropriate .............. 16

  F.  Plaintiffs' Overtime Claim Is Not Suitable For Class Treatment ..................... 16

    1.  This *Helde* court previously found Knight Transportation's
compensation system complied with Washington's overtime
regulations ............................................................................................ 16

      a.  Plaintiffs' attempts to dodge the on-point Helde finding
are misplaced ............................................................................ 19

      b.  If plaintiffs' arguments are accepted, the reasonable
equivalence analysis must necessarily be conducted on an
individual basis ......................................................................... 21

III.  CONCLUSION ............................................................................................................ 21

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION  i
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044  Tel: 206.839.4800

# TABLE OF AUTHORITIES

**CASES**

*Barton v. State, Dep't of Transp.*
   178 Wn. 2d 193 (2013)............................................................................9

*Chatterton v. Bus. Valuation Research, Inc.*
   90 Wn. App. 150 (1998)..........................................................................9

*Demetrio v. Sakuma Bros. Farms*
   183 Wn.2d 649 (2015)............................................................................20

*Ellis v. Costco Wholesale Corp.*
   657 F.3d 970 (9th Cir. 2011) ..................................................................3

*Gonzales v. Arrow Fin. Services, LLC*
   489 F. Supp. 2d 1140 (S.D. Cal. 2007) ..............................................2, 3

*Hanon v. Dataproducts Corp.*
   976 F.2d 497 (9th Cir. 1992) ..................................................................4

*Helde v. Knight Transp., Inc.*
   982 F. Supp. 2d 1189 (W.D. Wash. 2013) ........................11, 15, 17, 19

*Helde v. Knight Transp., Inc.*
   No. C12-0904RSL, 2013 WL 5588311 (W.D. Wash. Oct. 9, 2013) .......... passim

*Helde v. Knight Transportation, Inc.*
   No. C12-0904RSL, 2016 WL 1687961 (W.D. Wash. Apr. 26, 2016)...................................9

*Liberty Mut. Ins. Co. v. Tribco Const. Co.*
   185 F.R.D. 533 (N.D. Ill. 1999) ............................................................10

*Marr v. Bank of Am.*
   No. C 09-05978 WHA, 2011 WL 845914 (N.D. Cal. Mar. 8, 2011), *aff'd sub
   nom. Marr v. Bank of Am., NA*, 506 Fed. Appx. 661 (9th Cir. 2013) ....................11

*Mazza v. American Honda Motor Co., Inc.*
   666 F.3d 581 (9th Cir. 2012) ..................................................................3

*Mendis v. Schneider National Carriers Inc.*
   2016 WL 6650992 (W.D. Wash. Nov. 10, 2106)..........................19, 20

*Mytych v. May Dep't Stores Co.*
   260 Conn. 152 (2002)..............................................................................11

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION  ii
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

*Nance v. May Trucking Co.*
  685 F. App'x 602 (9th Cir. 2017)..........................................................................15

*Negrete v. Allianz Life Ins. Co. of N. Am.*
  287 F.R.D. 590 (C.D. Cal. 2012)............................................................................3

*Pryor v. Aerotek Scientific, LLC*
  278 F.R.D. 516 (C.D. Cal. 2011).......................................................................3, 4

*Sprague v. Gen. Motors Corp.*
  133 F.3d 388 (6th Cir. 1998).................................................................................10

*Stone v. Advance America*
  278 F.R.D. 562 (S.D. Cal. 2011)............................................................................3

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) .....................................................................................2, 3, 4

*Zeisel v. Diamond Foods, Inc.*
  2011 WL 222113 (N.D. Cal. June 7, 2011)............................................................2

*Zinser v. Accufix Research Institute, Inc.*
  253 F.3d 1180 (9th Cir. 2001)................................................................................4

S<small>TATUTES</small>

Federal Motor Carrier Act ...................................................................................17

O<small>THER</small> A<small>UTHORITIES</small>

Rest. (Second) of Conflict of Laws, §145(2) ..........................................................6

FED. R. CIV. P. 23................................................................................................2, 3, 4

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - iii
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1

## I.    INTRODUCTION

2  The majority of plaintiffs' currently pleaded claims should be dismissed as a matter of

3  law as detailed in Defendants'[1] pending summary judgment motion.  Specifically, because of

4  Knight Transportation and Knight Refrigerated's out-of-state operations, all of the Washington-

5  law claims asserted against these two entities should be dismissed.  In addition, plaintiffs' on

6  duty, not driving claim should be dismissed as to all Defendants.  However, even if these

7  claims did not warrant dismissal, they, along with plaintiffs' other claims, are not suitable for

8  class-wide treatment.

9  First, as an initial matter, the choice-of-law analysis described in Defendants' summary

10  judgment motion relies on uncontested evidence that covers Defendants' practices as to the

11  putative class members.  However, to the extent plaintiffs attempt to contest this evidence, not

12  with evidence that Knight's general practices are different than described, but rather through

13  irregular experiences of individual drivers, individual questions that preclude class certification

14  arise.

15  Second, plaintiffs' creative—and legally flawed—arguments in support of their on duty,

16  not driving claim, even if accepted, lead to individual liability issues.  Plaintiffs' theory, that

17  drivers must receive separate compensation for their "non-production" time, only raises the

18  question, as the *Helde* court recognized, of which tasks individual drivers agreed would be

19  covered by their piece rate.  This contract based analysis cannot be completed on a class-wide

20  basis.

21  Third, liability for plaintiffs' per diem claim cannot be determined without first

22  analyzing what individual drivers agreed would be their per-mile wage.  Drivers who elected to

23  take part in the per diem plan received certain tax benefits, but had a per mile rate that was two

24  cents lower. In claiming that the per diem plan constituted a deduction, plaintiffs ignore that

25

26  [1] Collectively, Defendants are Knight Transportation, Inc. ("Knight Transportation" or "Transportation"), Knight Refrigerated, LLC ("Knight Refrigerated" or "Refrigerated"), and Knight Port Services, LLC ("Knight Port Services" or "Port Services").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION  1
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

there cannot be a deduction if a driver agreed to the wage provided under the per diem plan (even if that wage was lower than the wage driver would have received if he was not on the per diem plan). Accordingly, individual questions will arise regarding this threshold issue.

Fourth, between the three Knight entities, and over the course of the proposed class period, there were a host of differences in drivers' orientation program that affect potential liability. Not only did compensation differ, the amount of time drivers spent attending orientation and the time spent on topics that can be considered compensable time also differed. Determining which drivers allegedly did not receive adequate compensation for compensable orientation time would require evaluating each driver's experience.

Fifth and finally, plaintiffs' attempts to escape *Helde's* on-point holding dismissing the overtime claim against Knight Transportation only raises individual issues. In *Helde*, the court dismissed plaintiffs' overtime claim based on the finding that Knight's compensation system was reasonably equivalent to a time-and-half pay structure. Plaintiffs assert *Helde* does not control because the "base rate of pay" used to determine reasonable equivalence has changed. It has not, and plaintiffs' arguments to the contrary only raise individualized issues.

## II.   ARGUMENT

### A.   Class Certification Standard.

#### 1.   Rule 23(a)

A party wishing to certify a case as a class action must satisfy Rule 23(a)'s prerequisites. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are ***in fact*** sufficiently numerous parties, common questions of law or fact, etc.") (emphasis added).[2]

---

[2] Plaintiffs cite *Zeisel v. Diamond Foods, Inc.*, 2011 WL 222113 (N.D. Cal. June 7, 2011) (quoting *Gonzales v. Arrow Fin. Services, LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007)) for the proposition that doubts regarding the propriety of class certification should be resolved in favor of certification. *Gonzales* held that "[t]o prevail on its decertification motion, defendant faces a heavy burden because doubts regarding the propriety of class certification should be resolved in favor of certification" but this has been cast into doubt after *Wal-Mart*. *See*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 2
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

"When considering class certification under Rule 23, district courts are not only at liberty to, but must perform 'a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (quoting *Wal-Mart*, 564 U.S. at 350–51 (2011)). "[T]he evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims.  The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law or fact are obvious examples." *Ellis*, 657 F.3d at 980 (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, n.12 (1978).  Thus, "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements."  *Id.* at 981.

**Commonality:** The commonality element "requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'"  *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (citing *Wal-Mart*, 564 U.S. at 350). It is not enough that the class complaint merely raise common questions.  *Wal-Mart*, 564 U.S. at 350.  The plaintiff must demonstrate the capacity of class-wide proceedings to generate common answers.  *See id*; *Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516, 526 (C.D. Cal. 2011) ("[T]he critical inquiry is not whether there are common questions, but whether they will generate common answers."); *Stone v. Advance America*, 278 F.R.D. 562, 569 (S.D. Cal. 2011) ("[C]ourts have been unwilling to find commonality where the resolution of 'common issues' depends on factual determinations that will be different for each class plaintiff.").

Here, plaintiffs attempt to establish commonality by doing exactly what *Wal-Mart v. Dukes* prohibits—listing a series of alleged common questions.  *See* Mot. at 17:22–18:7.  The critical issue is not whether there are common questions, but whether class-wide proceedings

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 598 (C.D. Cal. 2012) (noting cited portion of *Gonzales* was no longer good law because "*Dukes* teaches that the requirements of Rule 23 must 'actually' be met").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 3
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    will generate common answers to those questions. *See Wal-Mart*, 564 U.S. at 349.  As detailed

2    below, plaintiffs' motion fails to describe how class-wide proceedings will generate common

3    answers.  To the contrary, individualized inquiries will be required to answer these common

4    questions.

5        **Typicality and Adequacy:** Plaintiffs also cannot satisfy the typicality or adequacy

6    requirements of Rule 23(a) for several of plaintiffs' claims because those claims are not based

7    on conduct common to the class, but unique to plaintiffs. *Hanon v. Dataproducts Corp*., 976

8    F.2d 497, 508 (9th Cir. 1992) (the test for typicality "is whether other members have the same

9    or similar injury, whether the action is based on conduct which is not unique to the named

10   plaintiffs, and whether other class members have been injured by the same course of conduct").

11       **2.    Rule 23(b)**

12       In addition to Rule 23(a), plaintiffs must also satisfy Rule 23(b)(3). *See* Mot. at 29:19–

13   25.  The requirements of Rule 23(b)(3) are "far more demanding" than Rule 23(a)'s

14   commonality requirement. *Pryor*, 278 F.R.D. at 530.  A common policy alone is not sufficient

15   to establish predominance. *Id*. at 532 ("[W]ere a common policy alone sufficient to establish

16   predominance,  the  predominance  requirement  would  merge  with  the  commonality

17   requirement.").  Rather, the relevant question under predominance is how that common policy

18   affects individual putative class members. "[I]f the main issues in a case require the separate

19   adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would

20   be inappropriate." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189–90 (9th Cir.

21   2001) (internal quotation omitted).  Plaintiffs here cannot meet the demanding requirements of

22   Rule 23(b)(3) because individualized issues predominate over issues common to the class as a

23   whole.

24

25

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 4
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

**B.    Plaintiffs' Washington-law Claims Against Transportation And Refrigerated, Including Their Rest Break Claim, Are Not Properly Asserted Under Washington Law.**

As described in Defendants' summary judgment motion, drivers employed by Knight Transportation and Knight Refrigerated were based, directed, and controlled from out-of-state locations—*i.e.*, Fairview, Oregon (Transportation) and Idaho Falls, Idaho (Refrigerated). Accordingly, under the applicable choice-of-law analysis, plaintiffs' Washington rest break claim, as well as their other Washington-law claims, are not properly asserted against these two entities. However, to the extent plaintiffs attempt to escape the application of Oregon or Idaho law through anecdotal experiences of specific class members, individual questions arise regarding which state's law should apply to specific putative class members.

Washington-resident drivers employed by Knight Transportation are based out of Transportation's Fairview, Oregon Terminal. *See* Declaration of Kevin Quast in Support of Defendants' Motion for Partial Summary Judgment (Dkt. No. 75) ("Quast Decl.") ¶ 3. These drivers attend orientation in Oregon, are dispatched from Oregon, attend review meetings in Oregon, and are supervised by Oregon-based mangers who make decisions about their compensation. *See* Declaration of Darren Davies in Support of Defendants' Motion for Partial Summary Judgment (Dkt. No. 74) ("Davies Decl.") ¶¶ 3–8. Similarly, Knight Refrigerated's Washington-resident drivers are based out of Refrigerated's Idaho Falls, Idaho terminal where they are recruited, attend orientation, receive their dispatching instructions, attend annual review meetings, and are supervised by Idaho-based personnel who make decisions about driver compensation. Quast Decl. ¶ 5; Declaration of Jason Carlson in Support of Defendants' Motion for Partial Summary Judgment (Dkt. No. 73) ("Carlson Decl.") ¶¶ 3–8; Declaration of Anthony Todaro in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Todaro Decl.") Ex. B (Carlson Dep.) at 10:8–19, 71:7–24.

Under Washington's most significant relationship test, four factors apply to the choice-of-law analysis: (a) the place where the injury occurred, (b) the place where the conduct

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 5
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.  Rest. (Second) of Conflict of Laws, §145(2); *see also Helde v. Knight Transp., Inc.*, No. C12-0904RSL, 2013 WL 5588311, at *2 (W.D. Wash. Oct. 9, 2013) ("In most conflict of laws situations, Washington applies the 'most significant relationship' test as set forth in the Restatement (Second) of Conflict of Laws.").

As detailed in Defendants' summary judgment motion, and supported by uncontested testimony regarding Knight's practices, the balance of these factors point squarely to the application of Oregon and Idaho law and the dismissal of plaintiffs' Washington-law claims, including their Washington rest break claim.  *See* Dkt. No. 71 at 14:3–19:7.

However, to the extent plaintiffs attempt to contest the choice-of-law analysis through individually based evidence, such evidence only raises class certification issues.  For example, it is uncontested that Washington-resident Transportation drivers attend orientation at the Fairview, Oregon terminal.  To the extent plaintiffs try to counter this fact, not with testimony that the orientation is held in Washington, but that an individual through unusual circumstances attended orientation in another state, such evidence only raises individual questions about whether that driver fits within the same choice-of-law framework.  Additionally, if the named plaintiffs attempt to claim the choice-of-law analysis should be different based on their own outside-the-norm experiences, typicality issues arise given that the named class members' experiences would differ from the class they are seeking to represent.  Indeed, the named plaintiffs' testimony weakly attempts to contest the choice-of-law analysis, but such efforts only raises individualized inquiries regarding whether the named plaintiffs' experiences are typical of the class.  *See, e.g*., Todaro Decl. Ex. D (Sampson Dep.) at 23:13–24:3 (discussing signed document stating "My home terminal is in Portland, Oregon" but testifying "I feel that my home terminal was in Kent…."); *id.* Ex. D (Sampson Dep.) at 28:6–17 (disputing statement "I was recruited and hired at the Portland, Oregon location" in part, stating "I don't remember

this being set in stone that I was somehow, you know, connected to Portland to that degree."); *id*. Ex. D (Sampson Dep.) at 25:19–26:11 (Oregon was where she went to orientation and where her truck was serviced, but "[t]hey had terminals all over the place" and "if I was in Phoenix, that was my terminal"; stating she was "not always" dispatched from Oregon terminal); Todaro Decl. Ex. E (Raymond Dep.) at 48:6–25 (stating he drove in Idaho, but "not very often"; "drove all [over] the country…back east, California and stuff").

Accordingly, plaintiffs' Washington-law claims against Knight Transportation and Knight Refrigerated should be dismissed, and to the extent plaintiffs attempt to counter this on-point analysis through anecdotal experiences that run counter to the norm, such evidence only suggests the choice-of-law analysis cannot be completed on a class-wide basis.

### C.   Plaintiffs' On Duty, Not Driving Claim Is Legally Flawed And Not Suitable For Class Treatment.

Plaintiffs' on duty, not driving claim should be dismissed as detailed in Defendants' pending summary judgment motion. *See* Dkt. No. 71 at 19:8–20:15. Even if dismissal were not warranted, it cannot be certified under plaintiffs' (legally flawed) theory of liability.

Plaintiffs note in their class certification motion that the *Helde* court certified an on-duty-not-driving time claim. But the *Helde* court's certification of an on-duty-not-driving time claim contemplated a different legal theory—*i.e.*, whether the compensation system as a whole tended to undercompensate drivers, when averaging their wages over a workweek. *See Helde*, 2013 WL 5588311, at *3, n.3 (certifying non-driving work claim on common question of whether defendant's compensation system "uniformly results in pay that is no less than the equivalent of the minimum wage rate," but noting if the "compensation system results in an hourly wage that hovers near the minimum wage required by the MWA, individualized calculations would be necessary to determine how many non-driving hours an employee worked in a given week and whether he or she were adequately compensated").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 7
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1
2
3
4
5
6

This is not what plaintiffs allege here.  Plaintiffs make no attempt to show or argue that, when averaged across a workweek, plaintiffs' wages fall below the minimum wage.  Instead, plaintiffs argue, rather creatively, that under WAC 296-126-021, each hour of "non-production" time must be paid "per hour" (*e.g.*, on an hourly basis).  *See* Mot. at 14:3–7. Plaintiffs' legal theory is incorrect, and as addressed in Defendants' summary judgment motion, runs counter to on-point authority from this Court.  *See* Dkt. No. 71 at 19:8–20:15.

7
8
9
10
11

If plaintiffs' incorrect legal theory is accepted, however, individualized inquiries predominate.  Plaintiffs' theory—that drivers must receive separate compensation for their "non-production" time—presents the individualized contract-based question of what tasks specific drivers agreed would be covered by their trip pay and what other tasks would constitute "non-production" time.

12
13
14
15
16
17

Knight Transportation and Knight Refrigeration drivers are paid "per trip" (trip pay) for hauling and delivering a load, which includes compensation for all routine non-driving duties associated with the load (*e.g.* pre and post trip inspections), along with, if appropriate, an additional payment for certain extra duties that may be required that are not covered by trip pay.  Quast Decl. ¶¶ 8–11.  The *Helde* court, when it rejected plaintiffs' on duty, not driving argument, found the same:

18
19
20
21
22

> Knight offers employment opportunities through a pre-trip proposal that specifies the compensation for hauling and delivering a load, plus any additional pay associated with activities deemed "non-routine," such as border crossings, extra stops, or the transport of hazardous materials. <u>Although the base compensation for the trip is calculated by multiplying an estimate of the miles driven by the driver's per-mile rate (with an added premium for short hauls), the parties understand that the base amount serves as compensation for various tasks associated with hauling and delivering the load, not simply for driving.</u>

23
24
25

*Helde v. Knight Transportation, Inc.*, No. C12-0904RSL, 2016 WL 1687961, at *2 (W.D. Wash. Apr. 26, 2016).

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 8
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1

2

3

4

5

6

7

8

9

Here, plaintiffs contend that the agreed upon piece-rate (the trip pay) does not include any duties other than driving, and that drivers are entitled to additional compensation for all non-driving tasks.   *See* Mot. at 14:8–15 (relying upon individual driver declarations). However, in rejecting this argument, the *Helde* court stated that such a claim would only be viable if it was based on a contractual theory of liability:  "**[I]f** the parties negotiated a straight per-mile compensation scheme and Knight then demanded that its drivers accept less per mile and allocate the remainder to non-driving tasks" the plaintiff would then have a claim under the Wage Rebate Act, because "an employer is also required to satisfy any wage obligations it assumed **through contract**."   *Helde*, 2016 WL 1687961, at *2 (emphasis added).[3]

10

11

12

13

14

15

16

17

18

19

Accordingly, determining liability under plaintiffs' legal theory involves an analysis of contract formation and interpretation.  Under Washington's objective theory of contracts, the touchstone of contract interpretation is evidence of the parties' intent.  *See Barton v. State, Dep't of Transp.*, 178 Wn. 2d 193, 209, 308 P.3d 597, 606 (2013).  "The intent of the parties is determined by examining their objective manifestations, including both the written agreement and the context within which it was executed."  *Chatterton v. Bus. Valuation Research, Inc.*, 90 Wn. App. 150, 155, 951 P.2d 353, 356 (1998).  "If the agreement has two or more reasonable meanings when viewed in context, the court must identify and adopt that which reflects the parties' intent.  In the latter situation, a question of fact is presented ..."  *Id.* (internal quotations omitted).

20

21

22

23

24

Particularly here, where plaintiffs are not relying upon a written form contract to base their straight per-mile compensation scheme claim, but individual driver testimony to attempt to dispute Defendants' evidence regarding the agreed upon piece-rate, resolution of plaintiffs' claim would require an individualized inquiry regarding the contract and intent of each of the

25

26

[3] In *Helde*, the court found plaintiffs had failed to present evidence of such a contract (a straight per-mile compensation scheme).  *Helde*, 2016 WL 1687961, at *2 ("The evidence in this case does not, however, support such a claim.").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 9
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

drivers as to the contract.  Other courts have refrained from certifying a class under similar circumstances.  *See, e.g.*, *Liberty Mut. Ins. Co. v. Tribco Const. Co.*, 185 F.R.D. 533, 538–39 (N.D. Ill. 1999) (rejecting contention that contractual duties are uniform across the class, noting that the claim "relies almost exclusively on oral representations, as opposed to written representations" and thus case "is not suitable as a class action"); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998) (no commonality over plaintiff's bilateral contract/"side deal," where contract consisted of "any pertinent document the retiree might have signed" "as well as any pertinent representations GM might have made to the retiree, whether orally, in writing, or both" such that individual class members might have received different sets of representations).

Because individualized disputes over the agreed upon piece-rate would predominate this claim is not appropriate for class treatment.

**D.     Plaintiffs' Per Diem Claim Is Not Suitable For Class Treatment.**

Until 2016, Knight Transportation and Knight Refrigerated gave their drivers a choice to be paid under one of two different payment plans.[4]  Todaro Decl. Ex. A (Quast Dep.) at 72:11–25.  One plan calculated trip pay at a particular rate (*e.g.*, at $0.31 per mile) and provided drivers with certain tax benefits (the per diem plan), while the other plan calculated trip pay at a rate that was generally two cents per mile higher (*e.g.*, $0.33 per mile) but did not have these same tax benefits.  *Id*. Ex. A (Quast Dep.) at 69:17–25 (acknowledging that drivers on the per diem program had a two cent difference in their rate of pay than the drivers in the non-per diem program).  Plaintiffs assert, incorrectly, that one of these plans, the per diem plan, constituted a deduction in drivers' wages.  *See* Mot. at 12:4–13.  In the *Helde* litigation, the court denied summary judgment on this claim given the Court's finding that factual issues existed over whether the per diem plan constituted a deduction.  *See Helde v. Knight Transp.,*

---

[4]  Plaintiff's per diem claim relates only to Knight Transportation and Knight Refrigerated drivers, as the per diem pay plan was not open to Port Services drivers. *See* Todaro Decl. Ex. C (Cervinschi Dep.) at 142:11–24.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 10
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  *Inc.,* 982 F. Supp. 2d 1189, 1197 (W.D. Wash. 2013) (*abrogated on other grounds by Dilts v.*

2  *Penske Logistics, LLC*, 739 F.3d 627 (9th Cir. 2014)).

3        Before the question of whether the per diem plan constituted a deduction is reached,

4  however, there is the threshold question of what per-mile rate each driver agreed to be paid.

5  Indeed, if a driver agreed to be paid $0.33 per mile and then received $0.31 per mile because

6  she chose the per diem plan, there is a question about whether the driver's choice to take part in

7  the per diem program constituted a deduction. However, if a driver agreed to be paid $0.31 and

8  then received that same per mile wage because she was part of the per diem program, there

9  could not possibly be a deduction because the driver simply received her agreed upon wage.

10 Courts have recognized this distinction. *See, e.g., Marr v. Bank of Am.*, No. C 09-05978 WHA,

11 2011 WL 845914, at *2–6 (N.D. Cal. Mar. 8, 2011), *aff'd sub nom. Marr v. Bank of Am., NA*,

12 506 Fed. Appx. 661 (9th Cir. 2013) (recognizing a distinction "between a plan that provides a

13 wage, makes deductions, and then provides a reduced wage, and a plan that does not provide a

14 wage amount until costs are taken into account"); *Mytych v. May Dep't Stores Co.,* 260 Conn.

15 152, 156, 793 A.2d 1068, 1070 (2002) (affirming trial court's grant of summary judgment

16 because the alleged deductions at issue were part of the formula for calculating commission due

17 rather than a deduction from wages).

18       Here, during orientation, drivers were presented information regarding both pay plans,

19 were informed they could choose which pay plan to be paid under, and later change pay plans

20 without penalty if he or she chose to do so. *See* Todaro Decl. Ex. A (Quast Dep). at 72:14–

21 73:20. Plaintiffs, however, dispute that they ever agreed to have their wages calculated under

22 the per diem pay plan (at $0.31 cents per mile, partially taxable). *See* Mot. at 13:5–8. Thus,

23 key to this inquiry is what pay plan the employee **agreed** to. For example, did the employee

24 agree to be paid at $0.33 cents per mile (and have all mileage pay earned at that rate be taxable)

25 or did the employee agree to be paid $0.31 cents per mile (and have a portion of the mileage

26 pay earned at that rate taxable, and a portion of that pay earned at that rate non-taxable)?

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 11
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

Like the on duty, not driving claim, the dispute is based on individual verbal agreements and what each driver believed to be his or her agreed upon wage rate.  *See, e.g.*, Todaro Decl. Ex. E (Raymond Dep.) at 62:12–63:4 (stating he had never seen document entitled "Per diem effect on take home pay" and testifying that "[m]ost of the training that we had on payroll was verbal" and that he was not "actually shown a lot of stuff").  Determining whether a driver agreed to have her wages calculated pursuant to a $0.31 cents per mile (partially taxable) pay plan verses whether a driver agreed to have her wages calculated under a fully taxable $0.33 per mile pay plan, would require asking each individual driver what representations she had received and what documents she was provided, raising a host of individualized inquiries.[5]

The threshold question regarding the wage plaintiffs' agreed to be paid—which must be addressed to determine if there is even possibly a deduction—necessarily involves individual contractually based questions that preclude certification.

**E.     Plaintiffs' Orientation Claim Contains A Host Of Variables That Do Not Allow for Class-Wide Adjudication.**

**1.     Driver applicants attended separate orientations for Transportation, Refrigerated, and Port Services.**

Each defendant ran its own orientation program, also referred to as a Driver Qualification Process, for driver applicants.  Knight Port Services' orientation, for example, was not conducted with Knight Transportation or Knight Refrigerated driver applicants.  *See* Todaro Decl. Ex. C (Cervinschi Dep.) at 80:24–81:5 (Port Services applicants would never be in the same kind of orientation as Refrigerated or Transportation).   Transportation, Refrigerated, and Port Services each had different service centers located in different states that

---

[5] Individualized inquiries also arise over various contractual defenses and arguments that Defendants may have if a particular individual disputes that he agreed to be paid a specific amount, including whether the driver waived any contractual right through inaction or in fact did choose to be paid a certain amount.  *See, e.g.*, Todaro Decl. Ex. E (Raymond Dep.) at 63:8-19 (stating he understood he was being paid on the per diem pay plan, but that he never informed Defendant that he did not want to be on the per diem pay plan "because I actually thought it was better at the time…. all I know is I was getting more money, I thought I was getting more money from being on it than I was not being on it").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 12
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    each conducted their own orientation programs.  *See id*. at 80:24–81:7; *id*. Ex. B (Carlson Dep.)

2    at 68:3–9 (orientation for Refrigerated drivers only in Idaho Falls); *id*. Ex. A (Quast Dep.) at

3    99:22–100:14 (Transportation applicants go to Portland for orientation, Refrigerated applicants

4    go to Idaho Falls, and Port Services applicants go to Kent); *id*. Ex. C (Cervinschi Dep.) at

5    91:20–23.

6              **2.      Orientations varied in length depending on topics covered and
                        driver experience.**

7              Because each entity conducted its own orientations, the programs differed.   The

8    orientation for Transportation applicants runs from 18-21 hours over the course of two-and-a-

9    half days, including lunch breaks each day of up to an hour.  Todaro Decl. Ex. A (Quast Dep.)

10   at 99:22–100:11, 102:4–22, 103:11–18.  The length of orientation for Transportation applicants

11   varies "depending upon the number of people that are coming in" to each orientation session.

12   *See id*. Ex. A (Quast Dep.) at 102:10–16.

13             The process for Refrigerated applicants takes up to two-and-a-half days to three days,

14   depending on how long it took to get the DOT-mandated drug screens back.  *Id*. Ex. B (Carlson

15   Dep.) at 37:12–16.  The length of orientation for Refrigerated applicants also varies in length

16   because applicants might receive a streamlined orientation if they had previously worked for a

17   different Knight entity.  *Id*. Ex. B (Carlson Dep.) at 64:5–21.  The process for Port Services

18   drivers took up to three days, although this varied and was shorter if the driver was already

19   familiar with the part of orientation that covered company policies or how to use the Zonar

20   equipment.  *Id*. Ex. C (Cervinschi Dep.) at 89:3–90:2.

21             For all three entities, the orientation process generally included DOT-mandated drug

22   testing and the DOT driving test, which generally took the entire first day.  Todaro Decl. Ex. C

23   (Cervinschi Dep.) at 78:2–19, 84:10–85:9, 91:3–9 (although driving test differed because it was

24   with port equipment); *Id*. Ex. A (Quast Dep.) at 104:16–105:13.

25

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 13
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

For the remaining time, the orientation topics varied by entity (and on whether the driver was already familiar with company policies or equipment). The orientation topics for Refrigerated applicants were generally the same as for Transportation applicants, but also included an additional unit for operation and maintenance of refrigerated trailers. *Id.* Ex. B (Carlson Dep.) at 35:1–13; *see also id.* Ex. B (Carlson Dep.) at 64:5–21 (streamlined orientation for driver applicants who previously worked for a different Knight entity). The orientation for Port Services drivers also covered different topics due to the difference in operations. *Id.* Ex. C (Cervinschi Dep.) at 80:16–7 (orientation for "Port Services would be distinct because of the specific type of business that they would be doing, the specific type of job"); *Id.* Ex. C (Cervinschi Dep.) at 78:2–19 ("They would be trained on specifically how to operate a chassis, a super chassis, tractor with an extra drop axles, because we have those in Port Services. And a lot of the orientation would be on … how to get in and out of the ports, what happens in the ports, and so on."); *Id.* Ex. C (Cervinschi Dep.) at 85:24–87:21 (second day covered DOT logs and Zonar, and third day covered port-specific equipment and maps of the ports, and port procedures).

### 3. Orientation pay varied depending on the time period and on recruiting promotions.

The amount of compensation drivers received for orientation also varied between entities and when a diver applied to work as a driver. Depending on the applicant and the time period, Transportation applicants were paid $100, $150, or $500 for completing orientation, in addition to any travel or lodging expenses associated with travel to Portland. Todaro Decl. Ex. A (Quast Dep.) at 101:19–102:3; 103:2–10, 148:18–149:1. Refrigerated applicants were paid $150 or $300 for completing the process, depending on time period. *Id.* Ex. B (Carlson Dep.) at 37:6–38:5. Port Services applicants were paid $150 for completing the process, although this amount varied depending on whether Port Services was running a recruiting promotion. *Id.* Ex. C (Cervinschi Dep.) at 88:6–11.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 14
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1

2

### 4.     The amount of allegedly compensable time varied depending on the orientation program.

3

4
Defendants dispute that any of the time driver applicants spent in orientation is

5
compensable. *See, e.g., Nance v. May Trucking Co.*, 685 F. App'x 602, 604–05 (9th Cir. 2017)

6
(trucking company's three-day orientation, during which applicants completed driving and

7
skills tests on the first day, and on the second and third days were conducted in a classroom

8
setting during which the trucking company assured itself that applicants understood and would

9
comply with the trucking company's safety policies and regulatory standards if hired, was not

10
compensable time because orientation attendees were not employees under the FLSA or under

11
Oregon law).

12
However, the *Helde* court previously held in 2012, that although some orientation time

13
was compensable, time spent on tests and assessing applicants' basic proficiency for the job

14
was not compensable time because under applicable Washington law the drivers could not be

15
considered employees. *See Helde*, 982 F. Supp. 2d at 1201 ("the Court finds that defendant did

16
not permit plaintiffs to work when administering tests and assessing their basic proficiency for

17
the job"). The *Helde* court found that some orientation time was compensable because some

18
time focused on training applicants on Knight-specific policies and activities. *See id.* ("While

19
some portion of the training covered regulatory and safety aspects of trucking in general, the

20
majority … [was] spent training applicants on how to be a Knight employee …").

21
Here, the amount of time spent on such Knight-specific topics varied, depending on

22
whether or not the applicant had previously received or was familiar with Knight's policies or

23
equipment. *See, e.g*., Todaro Decl. Ex. B (Carlson Dep.) at 64:5–21; *Id.* Ex. C (Cervinschi

24
Dep.) at 89:3–90:2; *see also id.* Ex. E (Raymond Dep.) at 58:19–59:1 (doubting he was trained

25
much on Knight's payroll practices, "because there wasn't a whole lot about that particular

26
subject").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 15
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1           **5.**        **Variations in orientation make class treatment inappropriate.**

2         All applicants received at least some pay for orientation if they completed it.  Given the

3 variations in: (i) total length of orientation, (ii) the amount paid for completing orientation, and

4 (iii) variations in how much time was spent on Knight-specific topics that could be considered

5 compensable—many (and perhaps most) applicants did not suffer a minimum wage violation at

6 all.  Determining who did and did not suffer a minimum wage violation is an individualized

7 inquiry that would require analyzing how much time each driver spent in orientation, how

8 much time the driver was paid for orientation, and, most importantly, how much time was spent

9 on each topic.  For example, if the Court found that 10 hours was spent on Knight-specific

10 policies and equipment and was thus compensable time, an applicant who received $100 for

11 orientation would not have suffered a minimum wage violation under Washington law

12 (assuming Washington law applies).  If, however, the Court found that 15 hours was

13 compensable, a driver who was paid $100 would have suffered a minimum wage violation, but

14 a driver who was paid $150 or $500 would not.

15      **F.**     **Plaintiffs' Overtime Claim Is Not Suitable For Class Treatment.**

16           **1.**        **This *Helde* court previously found Knight Transportation's**
17                        **compensation system complied with Washington's overtime regulations.**

18         Plaintiffs bring the same overtime claim that the *Helde* court dismissed based on the

19 finding that Knight's piece-rate pay structure is reasonably equivalent to a traditional time-and-

20 a-half structure.  Plaintiffs' attempt to avoid *Helde*'s ruling by suggesting the analysis should

21 change because a different number should be used for Defendants' "base rate of pay," which is

22 used to determine reasonable equivalence.  Not only is plaintiffs' argument that a different

23 "base rate" should be used flawed, using plaintiffs' suggested analysis would require gathering

24 extensive evidence from each driver and conducting the reasonable equivalence analysis on an

25 individual basis.

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 16
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

As the court found in *Helde*, Washington's overtime statute, RCW 49.46.130, does not apply to an individual employed as a truck driver who is subject to the provisions of the Federal Motor Carrier Act, if the compensation system is "reasonably equivalent" to a time-and-a-half pay structure in that "it compensates hours worked in excess of forty hours per week at an overtime rate of pay and distributes the projected overtime pay over the average number of hours projected to be worked." *Helde*, 982 F. Supp. 2d at 1201.  WAC 296-128-012 provides that an "employer shall substantiate any deviation from payment on an hourly basis to the satisfaction of [the Washington State Department of Labor and Industries ("L&I")]" by using an alternative formula.

In *Helde*, Knight Transportation submitted evidence that it had requested, pursuant to WAC 296-128-012, for L&I to make a "reasonably equivalent determination" for its pay structure. *Helde*, No. 2:12-cv-00904-RSL, Dkt. No. 57-8 (Quast Decl. Ex. F); *see also id.*, Dkt. No. 57-10 at 6 (Quast Decl. Ex. H) (attaching L&I Administrative Policy "Process Protocols For Reasonably Equivalent Overtime Compensation Plans For Truck & Bus Drivers," stating L&I's reasonable equivalence determination "is an agency interpretation of whether the facts under review comply [with reasonable equivalence statute and regulations], considering L&I's specialized expertise in this area").

Plaintiffs state in their class certification motion that L&I was unable to make a determination because Knight Transportation failed to provide the additional information L&I requested.  This is false.  Knight submitted additional information to L&I in response to L&I's requests.  *See Helde*, No. 2:12-cv-00904-RSL, Dkt. No. 57-9 (Quast Decl. Ex. G).  However, on March 17, 2011, L&I informed Knight that L&I had received "an unusually high volume of requests" and because "each case requir[ed] lengthy, detailed reviews," "due to budget constraints and staffing shortages" it was unable to fully review Knight's submission and returned all documents without making a determination.  *Helde*, No. 2:12-cv-00904-RSL,

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 17
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  Dkt. No. 57-10 (Quast Decl. Ex. H).  There was no indication that L&I was unable to make a

2  determination due to lack of information.

3         In *Helde*, Knight Transportation also submitted evidence that L&I has approved as

4  "reasonably equivalent" under RCW 49.46.130(2) and WAC 296-128-012 other trucking

5  companies' mileage-based pay structures where the analysis showed that "drivers typically

6  receive[d] greater compensation under [the] plan than if they were paid straight time for hours

7  worked up to 40 per week and one and one-half times the regular rate of pay for hours worked

8  in excess of 40 hours per week under RCW 49.46.130(1)."  *See Helde*, No. 2:12-cv-00904-

9  RSL, Dkt. No. 56-6 at 3 (Keehnel Decl. Ex. F, July 18, 2008 L&I approval letter of Interstate

10 Distributor Co.'s per-mile pay system); *see also id*. Dkt No. 56-7 (Keehnel Decl. Ex. G,

11 December 16, 2010 L&I letter approving Gordon Trucking, Inc.'s compensation system); *see*

12 *also Helde*, No. 2:12-cv-00904-RSL, Dkt. No. 57-10 at 6 (Quast Decl. Ex. H) (L&I

13 Administrative Policy "Process Protocols For Reasonably Equivalent Overtime Compensation

14 Plans For Truck & Bus Drivers," listing factors L&I considers, including quantitative

15 difference between gross pay under employer's compensation system and pay that would have

16 been received under RCW 49.46.130(1)).

17        Importantly, L&I's analysis focused on whether the trucking companies' mileage-based

18 compensation structure *typically—and not in every instance—*provided drivers with reasonably

19 equivalent compensation.   Indeed, L&I approved Interstate's pay structure even though

20 Interstate's submission indicated that several of its long-haul drivers received less

21 compensation than if they had paid on an hourly, time-and-a-half system.  *See Helde*, No. 2:12-

22 cv-00904-RSL, Dkt. No. 56-10 at 6 (Keehnel Decl. Ex. J).

23        In *Helde*, Knight Transportation retained an expert to conduct a "reasonable

24 equivalence" analysis, using data from a sampling of driver logs showing hours worked and

25 pay records over a six-month period during the *Helde* class period.  *See Helde*, No. 2:12-cv-

26 00904-RSL, Dkt. No. 55.  A random sample of 20 drivers was used because the data is "cost

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 18
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  and time prohibitive to process and analyze." *Id.* at ¶ 7.  <u>The analysis showed that in the</u>

2  <u>aggregate, the drivers were paid 29.84% more than if they had been paid regular and overtime</u>

3  <u>wages during the six-month period.</u>  *Id.* ¶ 15.  Based on this analysis showing that Knight

4  Transportation's compensation system generally results in drivers being paid more than they

5  would have received under an hourly rate plus time-and-a-half system,[6] and evidence of L&I

6  approving similar compensation systems, the *Helde* court dismissed the overtime claim against

7  Knight Transportation on summary judgment and did not address this claim on class

8  certification.  *See Helde*, 982 F. Supp. 2d at 1201-02.

9       **a.   Plaintiffs' attempts to dodge the on-point *Helde* finding are misplaced.**

10      Plaintiffs' overtime claim in this action is identical to the claim the *Helde* court

11  dismissed.  Plaintiffs here similarly argue that the mileage-based compensation system does not

12  provide for any additional compensation when a driver works more than 40 hours in a week,

13  and submit driver declarations that, in conclusory fashion, state that they were "never paid any

14  overtime compensation."  These arguments were squarely rejected in *Helde*:

15

16      Plaintiffs argue that defendant's compensation system is fatally flawed because there was no additional compensation paid for hours in excess of forty. <u>The laws and regulations of Washington allow truck drivers to be paid on a flat per mile basis, regardless of the number of hours worked in a week, as long as the amount paid per mile is reasonably calculated to include compensation for both straight time and time-and-a-half</u>. Neither WAC 296–128–012 nor DLI require a separate, increased rate of pay or an additional stipend for overtime hours as long as the pay structure provides the reasonable equivalent of overtime pay.

17

18

19

20

21  *Helde,* 982 F. Supp. 2d at 1201.  *See also Mendis v. Schneider National Carriers Inc*., 2016

22  WL 6650992, *7 (W.D. Wash. Nov. 10, 2106) (holding that "a separate overtime mileage rate"

23  was not required by RCW 49.46.130 or WAC 296-128-112).

24

25  ---
[6] Curiously, plaintiffs claim Knight Transportation never conducted a self-audit subsequent to L&I's March 17, 2011 letter, even though plaintiffs cite to Knight Transportation's expert analysis and Knight Transportation references in its discovery responses the *Helde* court's finding of reasonable equivalence (based on Ms. Kwon's expert analysis).

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 19
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1

2

3

4

5

6

7

8

9

10

11

12

Although plaintiffs note here that Knight Transportation has not yet completed a similar (and costly) expert analysis to demonstrate—again—that its compensation structure is "reasonably equivalent," plaintiffs do not offer any argument as to why a similar analysis would produce a different result, except to dispute the "base rate of pay" used in the analysis. In *Helde*, the court used the $12 per hour hourly rate that was paid for local trips by drivers based out of the Washington service center as the "base rate of pay." *See Helde*, No. 2:12-cv-00904-RSL, Dkt. No. 55 ¶ 14; *Helde*, No. 2:12-cv-00904-RSL, Dkt. No. 57-1 ¶ 13. At that time, the same drivers were also paid a lower rate of $10 per hour for certain other non-driving tasks, so the use of $12 per hour was, in fact, conservative. *See Helde*, No. 2:12-cv-00904-RSL, Dkt. No 75 at p. 15, n.21. *See also Mendis*, 2016 WL 6650992, at *7 (noting L&I's "willingness to accept the hourly rate trucking companies pay their local or short-haul drivers as the 'base rate of pay'").

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiffs here contend that a higher base rate should be used, pointing to the varied[7] rest-break hourly rate of pay used after Knight Transportation changed its compensation structure to separately pay for rest breaks. The rest break rate of pay, however, is based on the "regular rate" calculation, and is not a "base rate" of pay. *See, e.g.*, *Demetrio v. Sakuma Bros. Farms*, 183 Wn.2d 649, 662, 355 P.3d 258 (2015) ("To calculate a pieceworker's regular rate … tally the total piece rate earnings and divide those earnings by the hours the pieceworker worked"). <u>The regular rate (on which rest break pay is calculated) is inappropriate because it is based in large part on piece-rate earnings that are already designed to incorporate compensation for expected overtime pursuant to WAC 296-128-012</u>. WAC 296-128-012 undoubtedly uses "base rate of pay" for the reasonable equivalence analysis rather than "regular rate of pay" for this reason.

25

26

---

[7] Because the piece-rate compensation varies by week depending on the number of trips or loads completed each week, the regular rate calculation on which the rest break pay is based also varies per week.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 20
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    Plaintiffs also point to Knight Refrigerated's testimony for its argument that a higher

2    base rate of pay should be used, but this testimony demonstrates that $12 per hour is the <u>base</u>

3    <u>hourly rate for local trips</u>.  *See* Mot. at 11 n.5.  The fact that the hourly rate for local trips could

4    be negotiated higher on a case-by-case basis does not mean the base rate was anything other

5    than $12 per hour.  *See, e.g.*, Declaration of Erika L. Nusser In Support of Plaintiffs' Motion

6    For Class Certification (Dkt. No. 53) ("Nusser Decl.") Ex. 17 at 43:13–21 (minimum local pay

7    was "$12 an hour").

8               **b.      If plaintiffs' arguments are accepted, the reasonable**
9                       **equivalence analysis must necessarily be conducted on an**
                        **individual basis.**

10   To the extent plaintiffs argue that the base rate should be based on individually

11   negotiated local trip rates (that are by all appearances negotiated based on individual driver

12   negotiations), rather than the minimum $12 per hour rate for local trips, the reasonable

13   equivalence would involve hundreds of individualized disputes with drivers over what the

14   appropriate base rate should be for each driver.  Similarly, if, pursuant to plaintiffs' argument,

15   drivers' hourly rest-break rate was used, the analysis would also necessarily involve evaluating

16   each drivers' pay rate week-by-week given this rate changes due to how many trips a driver

17   completes in a week.  Accordingly, unless plaintiffs concede that the $12 base rate analysis

18   from *Helde* applies, this claim is not suitable for class-wide adjudication.

                              **III.    CONCLUSION**

19

20   For all the above reasons, Defendants request that the Court deny class certification of

21   plaintiffs' claims.

22

23

24

25

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 21
No. 2:17-cv-00028-JCC

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    RESPECTFULLY SUBMITTED this 27th day April, 2018.

2

3                                    s/ Anthony Todaro
                                     Anthony Todaro, WSBA No. 30391
4                                    Jeff DeGroot, WSBA No. 46839
                                     DLA Piper LLP (US)
5                                    701 Fifth Avenue, Suite 7000
                                     Seattle, WA  98104-7044
6                                    Tel:     206.839.4800
                                     Fax:    206.839.4801
7                                    E-mail:  anthony.todaro@dlapiper.com
                                     E-mail:  jeffrey.degroot@dlapiper.com
8
                                     Attorneys for Defendants
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS'                    DLA Piper LLP (US)
MOTION FOR CLASS CERTIFICATION - 22               701 Fifth Avenue, Suite 6900
No. 2:17-cv-00028-JCC                    Seattle, WA  98104-7044 | Tel: 206.839.4800

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on April 27, 2018, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4   attorneys of record for the parties.

5       Dated this 27th day of April, 2018.

6

7                                   *s/ Anthony Todaro*
                                    Anthony Todaro, WSBA No. 30391
8

9

10

WEST\281233238.2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS'        DLA Piper LLP (US)
MOTION FOR CLASS CERTIFICATION - 23          701 Fifth Avenue, Suite 6900
No. 2:17-cv-00028-JCC                         Seattle, WA  98104-7044 | Tel: 206.839.4800