THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALERIE SAMPSON and DAVID RAYMOND, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KNIGHT TRANSPORTATION, INC., *et al.*,<br><br>Defendants. | CASE NO. C17-0028-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion for partial summary judgment (Dkt. No. 71). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

**I.    BACKGROUND**

Plaintiffs bring this putative class action against their former employers for allegedly violating several Washington wage and hour laws. (Dkt. No. 38 at 7–11.) Plaintiffs are Washington residents who worked as commercial truck drivers for Defendants. (*See* Dkt. Nos. 53-12, 53-13.) Defendant Knight Transportation, Inc. ("Transportation") is a commercial trucking company that operates terminals across the United States. (Dkt. No. 75 at 2.)

Transportation operates a terminal in Fairview, Oregon, where some of the putative class members worked as long-haul drivers.[1] (*Id*.; Dkt. No. 81-11 at 6.) Defendant Knight Refrigerated, LLC ("Refrigerated") is a subsidiary of Transportation and operates a terminal in Idaho Falls, Idaho, where some of the putative class members worked as long-haul drivers. (Dkt. No. 75 at 1–2; 81-12 at 5–6.) Defendant Knight Port Services, LLC ("Port Services") is also a subsidiary of Transportation and operated a terminal in Kent, Washington, where some of the putative class members worked as short-haul drivers. (Dkt. No. 75 at 1–3; Dkt. No. 81-12 at 5.) Transportation, Refrigerated, and Port Services (collectively "Defendants") are incorporated in Arizona and are overseen by the same core group of executives. (Dkt. No. 75 at 2.)

Plaintiffs allege that Defendants systematically violated Washington's wage and hour laws by failing to pay its drivers for rest breaks, failing to pay for all time worked, failing to pay for overtime, and unlawfully deducting wages. (Dkt. No. 38 at 2.) Plaintiffs have filed a motion to certify the following class: "All current and former driver employees of Knight Transportation, Inc., Knight Refrigerated, LLC and/or Knight Port Services, LLC who at any time from July 1, 2013 through the date of final disposition, worked as drivers while residing in the state of Washington." (Dkt. No. 52 at 9.)

Defendants filed this motion for partial summary judgment on two issues. First, Defendants argue that Plaintiffs' claims against Transportation and Refrigerated should be dismissed because Washington law does not apply to their drivers. (Dkt. No. 71 at 19.) According to Defendants, since drivers for Transportation and Refrigerated operate out of locations in Oregon and Idaho respectively, it is the laws of those states, not Washington, which should control Plaintiffs' claims. (*Id.* at 19–22.) Plaintiffs counter that Transportation and Refrigerated are subject to Washington law under controlling conflict of laws principles. (Dkt. No. 80 at 8.) Second, Defendants ask the Court to dismiss Plaintiffs' "on-duty, not-driving"

---

[1] The Oregon terminal is part of Knight Transportation's "dry van business." (Dkt. No. 75 at 2.) For clarity, the Court refers to this business as "Transportation."

claim because it is not cognizable under Washington law and has been rejected by several courts. (Dkt. No. 71 at 22–23.) Plaintiffs assert their claim is supported by Washington's Minimum Wage Act ("MWA") and the Washington Supreme Court's recent decision in *Carranza v. Dovex Fruit Co.*, 416 P.3d 1205 (Wash. 2018). (Dkt. No. 80 at 9–10.) Plaintiffs ask the Court to deny summary judgment and certify this question to the Washington State Supreme Court. (*Id.*)

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

### B. Applicability of Washington Law to Transportation and Refrigerated

When a federal court sits in diversity, it must apply the forum state's conflict of laws principles. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010). Washington courts use a two-step approach to conflict of laws issues. *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 550 (W.D. Wash. 2008). First, the court determines whether an actual conflict between applicable state laws exists. *Burnside v. Simpson Paper Co.*, 864 P.2d 937, 942 (1994). Neither party disputes that the applicable Washington wage and hour laws conflict with the analogous laws of Oregon and Idaho.[2] (*See* Dkt. Nos. 71 at 19, 80 at 13.)

---

[2] The Court has previously ruled that some of the Washington laws at issue in this case conflict with Oregon law because they provide greater protection to Washington-based employees than Oregon provides to its employees. *See Mendis v. Schnedier Nat'l Carriers, Inc.*,

When a conflict exists, Washington's choice of law rules direct courts to determine which state has the "most significant relationship" to a given issue, based on the factors outlined in Restatement (Second) of Conflict of Laws § 6 (1971) (hereinafter "Restatement"). *See Seizer v. Sessions*, 940 P.2d 261, 265 (Wash. 1997); *Experience Hendrix LLC v. James Marshall Hendrix Found.*, 240 F. App'x 739, 740 (9th Cir. 2007). Restatement section 6(1) provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." If no adequate directives exist in statutes or case law, the Court conducts a two-step analysis to determine which jurisdiction has the most significant relationship to the action. *See FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 331 P.3d 29, 36 (Wash. 2014); *Thornell v. Seattle Serv. Bureau, Inc.*, No. C14-1601-MJP, slip op. at 3 (W.D. Wash. June 13, 2016). First, "the court evaluates the contacts each interested jurisdiction has with the parties and the occurrence under the factors of Restatement section 145 plus any more specific section of the Restatement that is relevant to the cause of action."[3] *Woodward v. Taylor*, 366 P.3d 432, 436 (Wash. 2016). Courts then evaluate "the interests and policies of the potentially concerned jurisdictions by applying the factors set forth in Restatement section 6." *Id.*

1. <u>Statutory Directive Regarding Choice of Law</u>

Plaintiffs assert that the Washington Supreme Court has determined that the MWA contains a choice of law directive. (Dkt. No. 80 at 15) (citing *Bostain v. Food Express, Inc.*, 153 P.3d 846 (Wash. 2007)). Defendants respond that the MWA neither contains a choice of law directive, nor did the *Bostain* Court create one. (Dkt. No. 84 at 5–6.)

A statute contains a choice of law directive if it includes an express choice of law provision or "the intentions of the legislature on the subject can [] be ascertained by a process of interpretation and construction." Restatement § 6(1) cmts. a, b; *see also Experience Hendrix*

---

No. C15-0144, Dkt. No. 117 at 5 (W.D. Wash. Feb. 7, 2017). Defendants correctly point out similar conflicts with Idaho law. (*See* Dkt. No. 71 at 19) (citing I.C. § 44-1502, I.C. § 44 *et seq.*)

[3] The Restatement does not include a specific section that deals with statutory wage and hour claims like the ones at issue in this case.

*LLC*, 240 F. App'x at 740.

Plaintiffs do not argue that the MWA includes an express choice of law provision. (Dkt. No. 80 at 14.) Rather, they assert the Washington Supreme Court interpreted the MWA in *Bostain* and determined the law contained "a statutory directive on choice of law that must be applied if it is constitutional to do so."(*Id*. at 15.) The Court disagrees. The plaintiff in *Bostain* was an interstate truck driver who sued his employer for failing to pay overtime for the hours he worked outside of Washington. 153 P.3d at 846. The Supreme Court held that under the MWA, all hours that a Washington-based employee works, whether in the state or not, must be counted in the calculation of overtime. *Id*.

Plaintiffs' reading of *Bostain* goes beyond the case's holding. First, the Supreme Court was not interpreting the MWA in the context of a choice of law question; it was determining the extraterritorial scope of that statute in the context of a constitutional challenge. 153 P.3d at 846. Second, the Court stated that whether a "Washington-based" employee was subject to the MWA, was a question to be decided by traditional choice of law principles. *Id*. at n. 5. In arguing that *Bostain* creates a choice of law directive, Plaintiffs attempt to skip the threshold choice of law question. *See Id*. Finally, Plaintiffs are not only asking this Court to infer a statutory choice of law directive regarding the MWA, but also to analogize that directive to their wage and hour claims based on related laws. (Dkt. No. 80 at 15) ("This conclusion applies equally to the state's entire scheme of wage and hour laws."). The Court does not believe that *Bostain* created a choice of law directive for the MWA, much less for other provisions of the State's employment law.

2. <u>Contacts under Restatement Section 145</u>

When determining which state has the most significant relationship to the parties and occurrence at issue, courts consider the following contacts: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the

place where the relationship, if any, between the parties is centered. Restatement § 145(2).[4] "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id*. Courts do not merely "count contacts" but must "consider which contacts are most significant and [] determine where these contacts are found." *Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000 (Wash. 1976).

### *(a) The place where the injury occurred*

The Court immediately encounters difficulty in trying to determine where the "injuries" that underlie Plaintiffs' wage and hour claims occurred. Plaintiffs assert that Transportation and Refrigerated: (1) failed to pay drivers minimum wage for all hours worked; (2) failed to pay all required overtime; (3) failed to pay drivers minimum wage for a mandatory orientation program; (4) failed to provide their drivers with paid rest breaks; (5) withheld wages from drivers when they left the companies; (6) unlawfully deducted wages from drivers under the companies' "per diem program"; and (7) willfully withheld wages owed their drivers. (Dkt. No. 38 at 7–11.) The general "injury" associated with each of these claims is that drivers did not receive sufficient compensation for worked they performed. The difficulty is that the work, and corresponding injury, is not easily pinpointed to a single state. (*See* Dkt. No. 53-13 at 15) (Refrigerated driver: "I actually drove more times in Washington than I did in Idaho.") The amorphous quality of Plaintiffs' injuries makes it less important to the choice of law analysis. *See* Restatement § 145(2) cmt. e (noting factor is less important when "there may be little reason in logic or persuasiveness to say that one state rather than another is the place of injury.").

For a few of the claims, the putative class member's injuries occurred in discrete locations. The Court agrees with Defendants that the injury underlying the orientation claims "occurred" in Oregon and Idaho because Transportation and Refrigerated drivers conducted their

---

[4] Plaintiffs argue that the Court should not conduct its analysis using the section 145 factors because their claims are statutory and do not sound in tort. (Dkt. No. 80 at 21.) Their position is contrary to Washington law. *See FutureSelect Portfolio Mgmt.*, 331 P.3d at 36 (applying section 145 factors to claim under the Washington State Securities Act).

orientations at terminals in those states. (Dkt. Nos. 73 at 2, 74 at 2.) The Court also concludes that the injuries underlying Plaintiffs' unlawful deduction claims occurred in Arizona because that is where Defendants process employee payroll. (Dkt. No. 53-7 at 6.)

For the other claims, class members' alleged injuries occurred wherever they performed uncompensated work. Transportation and Refrigerated drivers completed trips across the United States. (*See*, *e.g.*, Dkt. Nos. 53-12 at 8–9; 53-13 at 15; 57 at 1.) As an example, if a class member was not paid for a rest break taken in Montana, his injury occurred in Montana. (*See* Dkt. No. 62 at 2.) Moreover, many of the putative class members, as Washington residents, would begin and end their routes in Washington. (*See, e.g.*, Dkt. Nos. 53-12 at 9; 56 at 1; 59 at 2.) Therefore, it is impossible for the Court to conclude that the injuries related to the majority of Plaintiffs' claims occurred in a particular state. Accordingly, this factor is minimally important to the most significant relationship test and does not militate toward the application of a specific states' law.

*(b) The place where the conduct causing the injury occurred*

Similar to the location of the relevant injuries, it is difficult to pinpoint the exact place where the conduct causing the alleged injuries occurred. The Court also finds this factor of lesser importance to the choice of law analysis because the relevant conduct occurred in several states. *See* Restatement § 145(2) cmt. e ("When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law with respect to most issues involving the tort.").

Defendants share a corporate office in Arizona and are overseen by the same group of executives. (Dkt. No. 75 at 2.) Defendants' Chief Operating Officer stated in his deposition that the rate of driver pay, policies regarding rest breaks, and conduct of driver orientations is essentially the same for all three companies. (Dkt. No. 53-7 at 15–19.) To the degree Plaintiffs' claims resulted from Defendants' uniform wage and hour policies—such as the per diem program, compensation rates, and non-payment for rest breaks—the conduct causing the alleged injuries is properly characterized as having occurred in Arizona.

Defendants argue that Oregon and Idaho were the relevant place of injury because that is where Transportation and Refrigerated drivers are managed and dispatched. (Dkt. No. 71 at 20.) The drivers' managers work out of the Oregon and Idaho terminals and assign trips from those locations. (Dkt. Nos. 73 at 2, 74 at 2.) The trip assignments include the length of the trip, mileage rate, and summary of extra duties that drivers must perform. (*Id*.) The manager's decisions are certainly relevant to Plaintiffs' claims because they go toward determining a driver's compensation. Plaintiffs, on the other hand, do not point to any evidence that suggests that the conduct causing their injuries occurred in Washington.

Accordingly, this factor is minimally important to the most significant relationship test and militates toward the application of Arizona, Oregon, and Idaho law.

*(c) The domicile, residence, or place of incorporation of the parties*

Where the injury at issue occurred in multiple places, the parties' residence or place of business becomes more important. *See* Restatement § 145(2) cmt. e. Since the alleged injuries in this case occurred in several states, the Court gives the parties' residence and place of business greater weight in the choice of law analysis.

Plaintiffs were Washington residents when they worked for Defendants. (*See generally*, Dkt. Nos. 53-12, 53-13.) Plaintiffs had Washington State driver's licenses and were prohibited by federal regulation from having a license from another state. (Dkt. No. 53-9 at 2–3.); *See* 49 C.F.R. § 383.21. Based on these contacts, Washington bears a clear relationship to all of the putative class members. By contrast, Defendants' contacts regarding this factor are split across multiple states. While Transportation and Refrigerated each operate terminals out of Oregon and Idaho, both companies are incorporated and perform various administrative functions out of Arizona. (Dkt. Nos. 73 at 2, 74 at 2, 75 at 2.)

Accordingly, this factor is moderately important to the most significant relationship test and militates toward the application of Washington law.

//

*(d) The place where the relationship between the parties was centered*

"When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered." Restatement § 145(2) cmt. e. Defendants assert that the employment relationship between Transportation and Refrigerated and their drivers is centered in Oregon and Idaho because that is where the respective operation terminals are located. (Dkt. No. 71 at 21.) Transportation and Refrigerated manage and dispatch their drivers out of these terminals. (Dkt. Nos. 73 at 2–3, 74 at 2–3.) Drivers conducted their mandatory orientations at these locations and could submit their trip logs using machines at the terminals. (Dkt. Nos. 73 at 2, 74 at 2, 81-13 at 5–6.) Transportation and Refrigerated paid administrative workers' compensation payments to Oregon and Idaho respectively. (Dkt. No. 72 at 2.)

Plaintiffs counter that Defendants advertise and recruit drivers from inside Washington. (*See* Dkt. Nos. 81-1–81-7; 53-12 at 4–5.) Defendants pay administrative workers' compensation to Washington's Department of Labor and Industries for all of its Washington-resident drivers. (Dkt. No. 53-7 at 21–22.) After completing their trips, drivers can submit their payroll information directly to the corporate headquarters using a smartphone application. (*See* Dkt. No. 81-13 at 4–5.) Plaintiffs argue that these contacts demonstrate that their relationship with Transportation and Refrigerated was centered out of Washington. (Dkt. No. 80 at 22.) On balance, the Court finds that the relationship between Transportation and Refrigerated and its drivers was centered out of Oregon and Idaho respectively.

The Court concludes that this factor is moderately important to the most significant relationship test and militates toward the application of Oregon and Idaho law.

### 3. States' Policies and Interests under Restatement Section 6

The second step in the most significant factor test is to "evaluate the interests and public

policies of the [relevant] jurisdictions."[5] *FutureSelect Portfolio Mgmt., Inc.*, 331 P.3d at 27. "The extent of the interest of each potentially interested state should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and the particular issue involved." *Southwell v. Widing Transp., Inc.*, 676 P.2d 477, 480 (Wash. 1984) (citation omitted).

The Court concludes that Washington has a clear interest in providing Plaintiffs with the protections of its wage and hour laws. Courts have consistently recognized Washington's "long and proud history of being a pioneer in the protection of employee rights." *Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 586 (Wash. 2000). The Washington Supreme Court has also interpreted the MWA broadly to apply the statute to Washington employees. *See Bostain*, 153 P.3d at 852 (upholding the constitutionality of applying the MWA to "employers who are doing business in Washington and who have hired Washington-based employees.") Unlike most states, Washington requires out-of-state companies, such as Defendants, to pay workers compensation for Washington residents. (Dkt. No. 72 at 2) ("Washington is the only state that requires Knight Transportation and Knight Refrigerated to make parallel workers compensation payments for resident drivers without regard to where they are based.").Washington's interest is especially strong because all putative class members are residents, Defendants recruit from within the state, and Plaintiffs conduct some of their work inside Washington. (*See supra*, Part II.B.2.a–d.)

The comparative interests of Oregon and Idaho appear less strong. Aside from asking the Court not to apply Washington law, Defendants provide little specificity about what public policies would be advanced by applying Oregon or Idaho's wage and hour laws. Presumably those states favor the interests of businesses over workers because their employment laws are

---

[5] Defendants suggest that the Court should only consider these factors if the contacts under section 145 are equal. (Dkt. No. 81 at 11.) This position is contrary to Washington law. *See Woodward*, 366 P.3d at 436 ("For the second part of the most significant relationship test, the court *must* then evaluate the interests and policies of the potentially concerned jurisdictions by applying the factors set forth in Restatement section 6.") (emphasis added).

less protective than Washington's. (*See supra* n. 2.) But those interests seem less significant under the facts of this case, where none of the plaintiffs are Oregon or Idaho residents, and the only connections that Transportation and Refrigerated appear to have to those states are a single operations terminal. (*See* Dkt. Nos. 73 at 2, 74 at 2, 75 at 2–3.)

Defendants argue that application of Washington law would frustrate the choice of law principles of uniformity and predictability. (Dkt. No. 84 at 11–12.) Defendants cite to a similar class action lawsuit they were involved with, in which an Oregon court applied that state's law to the plaintiffs' wage and hour claims. (*Id.*) (citing *Griffus v. Knight Transportation, Inc.*, Case No. 1006-08538 (Multnomah County Circuit Court, June 5, 2015)). In *Griffus*, a group of drivers who worked out of Transportation's terminal in Oregon sued the company alleging it violated several Oregon wage and hour laws. (Dkt. No. 76-8 at 3–4.) The Oregon state court certified a class of drivers who worked for Transportation in Oregon and applied Oregon law to the class claims. (*Id.*) Defendants suggest that if this Court were to apply Washington law to Plaintiffs' claims it would lead to inconsistent results and relitigate a choice of law issue that the *Griffus* court decided. (Dkt. No. 84 at 12–13.) The Court disagrees.

First, the proposed class in this case—Washington residents working for Transportation, Refrigerated, and Port Services—is different than the class that was certified in *Griffus*. The class in *Griffus* did not consider members' residency and only involved drivers who worked out of the Oregon terminal. (Dkt. No. 76-8 at 4.) Second, the record does not support that the *Griffus* court conducted a choice of law analysis before applying Oregon law. (*See generally* Dkt. No. 76-8.) Further, it does not appear that the defendant argued, or the court specifically considered, whether Washington law should apply to those class claims.[6] (*Id.*) Therefore, the record does not

---

[6] In *Griffus*, Transportation questioned whether Oregon law could be applied on a class-wide basis because some of the plaintiffs resided in Washington and the drivers performed most of their work outside the state. (Dkt. No. 76-7 at 50.) Here, Defendants take the opposition position, arguing that plaintiffs' residency and where they drove is of little relevance to the choice of law analysis. (*See* Dkt. No. 71 at 17–22.)

support Defendants' suggestion that *Griffus* has a collateral estoppel effect on the Court's choice of law decision in this case. *See McDaniels v. Carlson*, 738 P.2d 254, 258 (Wash. 1987) ("collateral estoppel precludes only those issues that have actually been litigated and determined.").

Application of Washington law to Plaintiffs' class claims is consistent with this Court's previous decisions in similar cases. *See Mendis*, No. C15-0144-JCC, Dkt. No. 117. In *Mendis*, the Court certified a class of truck drivers who alleged similar wage and hour claims as those brought by Plaintiffs in this case. *Id*. at 13. The class was comprised of drivers who resided and were licensed in Washington, but worked out of the Defendants' Oregon terminal. *Id*. at 6. The Court conducted a choice of law analysis and determined that Washington had the most significant relationship to the plaintiffs' claims because they resided in Washington, were licensed in Washington, and Defendant paid Washington-specific taxes. *Id*. In addition to these contacts, the Court noted that Washington's history of protecting employee rights "would tip the scale in Washington's favor." *Id*. The Court certified the class over the Defendant's objection that Washington law should not apply because the company did not operate terminals in Washington and drivers started and finished their trips in Oregon. *Id*.

The facts of this case align closely with *Mendis*. The putative class members reside and are licensed in Washington. (Dkt. No. 52 at 9.) While the Transportation and Refrigerated drivers were dispatched out of the Oregon and Idaho terminals, they worked in numerous states including Washington. (*See generally*, Dkt. Nos. 53-12, 53-13, 55–69.) Finally, Defendants pay Washington worker's compensation for each of the proposed class members. (Dkt. No. 75 at 2.)

For the above reasons, the Court finds that Washington has the most-significant relationship to Plaintiffs' class claims. Accordingly, Defendants' motion for summary judgment on all claims asserted against Transportation and Refrigerated is DENIED.

**C.     Plaintiffs' On-Duty, Not-Driving Claim**

Defendants use two methods to compensate their drivers. Long-haul drivers—those who

deliver loads across the United States and Canada—are paid a mileage-based piece rate ("mileage rate").[7] (Dkt. No. 75 at 3.) Under this rate, drivers are paid a set amount per mile depending on the length of the trip. (*Id*.) In addition to the mileage rate, long-haul drivers are paid a set amount for certain "additional duties" they perform during a trip, such as hand loading/unloading and border crossings. (*Id*. at 4.) Short-haul drivers—those who pickup loads from major ports in Washington and deliver them across the Pacific Northwest—are paid a flat rate per trip ("load rate"). (*Id*.)[8] The load rate is determined by several factors, including the trip length and type of load. (*Id*.) In addition to the load rate, short-haul drivers are paid a set amount for certain extra duties, such as having to wait at a port for longer than two hours.[9] (*Id*.) Both the mileage and load rates are "piece rates" because drivers are paid for tasks completed and not the amount of time worked. *See Erickson v. Dep't of Labor & Indus.*, 56 P.2d 713, 714 (Wash. 1936) (noting piece-rate workers are "paid by the piece instead of by the hour or day.")

Defendants assert that both forms of compensation are allowable under the MWA and related administrative regulations. (Dkt. No. 71 at 22) (citing Wash. Admin. Code. 296-126-021[10]). Pursuant to Washington Administrative Code 296-126-021, Defendants argue that they have "the flexibility to structure piece-rate pay to compensate for all regular tasks in a workweek so long as total weekly wages equal more than the minimum wage when divided by all hours worked." (*Id*.) Defendants assert that both of their piece rates comply with the "workweek averaging" that is contemplated under the relevant regulation. (*Id*.)

---

[7] Transportation and Refrigerated use the mileage rate. (Dkt. No. 75 at 3.)

[8] Port Services uses the load rate. (Dkt. No. 75 at 4.)

[9] For example, Plaintiff Raymond describes a time when he was paid $75 for waiting eight hours to pick up at load at a port. (Dkt. No. 53-13 at 24.)

[10] That regulation reads: "Where employees are paid on a commission or piecework basis, wholly or partially, (1) the amount earned on such basis in each work-week period may be credited as a part of the total wage for that period; and (2) The total wages paid for such period shall be computed on the hours worked in that period resulting in no less than the applicable minimum wage rate." Wash. Admin. Code 296-126-021.

Plaintiffs argue that Defendants' piece rates violate the MWA because drivers spend time completing tasks for which they are not paid. (Dkt. No. 80 at 29–30.) For example, drivers are not paid minimum wage for the time they spend conducting pre-trip inspections, completing paperwork, loading and unloading the truck, and refueling.[11] (*Id.*) Instead, the time spent on these tasks is subsumed within Defendants' mileage or load rate. (Dkt. No. 75 at 3–4) ("The trip-based wage . . . was meant to cover all non-driving tasks associated with a trip, including filling out paperwork, conducting vehicle inspections, performing maintenance activities, washing the truck, and any other work necessary to enable a driver to complete a trip.") Plaintiffs argue that the MWA requires employers to pay their employees "per hour" worked, and the workweek averaging used by Defendants is therefore unlawful. (Dkt. No. 80 at 30.) Plaintiffs ask the Court to certify the following question to the Washington State Supreme Court: "Does Washington's Minimum Wage Act require non-agricultural employers to pay their pieceworkers per hour for time spent performing activities outside of piece-rate work?" (*Id.* at 10.)

"Certification of questions of state law to the highest court of the state 'provides a means to obtain authoritative answers to unclear questions of state law.'" *Micomonaco v. State of Wash.*, 45 F.3d 316, 322 (9th Cir. 1995) (quoting *Toner v. Lederle Lab.*, 779 F.2d 1429, 1432 (9th Cir. 1986)). The certification standard is established by Washington law as follows:

> When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion in answer thereto.

Wash. Rev. Code § 2.60.020. Where the state court is in no better position than the federal court to interpret the state statute, certification is inappropriate. *Micomonaco*, 45 F.3d at 322. The decision to certify a question rests in the discretion of the district court. *Id.*

---

[11] Drivers log the time they spend on non-diving tasks as "on duty, not driving" and Plaintiffs have thus labeled their claim accordingly. (*See* Dkt. No. 56 at 2.)

Courts in this district, including this one, have previously held that Plaintiffs' on-duty, not driving claim are not cognizable under Washington law. *See Helde v. Knight Transportation, Inc.*, No. C12-0904-RSL, slip op. at 4–5 (W.D. Wash. April 26, 2016); *Mendis*, No. C15-0144-JCC, Dkt. No. 92 at 7. *Helde* involved a class of truck drivers alleging, among other things, that the Defendant's per-mile piece rate violated the MWA because drivers were not compensated for time they spent performing non-driving tasks. No. C12-0904-RSL, Dkt. No. 22 at 2–4. The Hon. Robert S. Lasnik rejected Plaintiffs' on-duty, not driving claim and held that "the MWA does not require payment on an hourly basis." *Id*. at Dkt. No. 161 at 3. Judge Lasnik emphasized that the framework established by WAC 296-126-021 authorized the Defendant's per-mile piece rate. *Id*. at 3–4. In the wake of *Helde*, this Court rejected a similar claim in *Mendis* that challenged a trucking company's mileage-based piece rate. No. C15-0144, Dkt. No. 92 at 7. Concurring with Judge Lasnik's reasoning, the Court ruled that WAC 296-126-021 allowed employers who used piece rates to use workweek averaging in order to comply with the MWA. *Id*.

The Court agrees with Plaintiffs that these prior holdings are called into question by the Washington Supreme Court's recent ruling in *Caranza*.[12] 416 P.3d 1205. The defendant company in *Caranza* paid its workers on a piece-rate basis to pick fruit. *Id*. at 1209. The workers were paid a set amount for each bin of fruit picked, but were not paid for other tasks related to their job such as "transporting ladders to and from the company trailer, traveling between orchards and orchard blocks, attending mandatory meetings or trainings, and storing equipment and materials." *Id*. The workers brought a class action lawsuit, alleging the employer's piece rate violated the MWA by failing to compensate them for the time they spent on "nonpicking activities." *Id*. The defendant asserted that its workers were compensated for their nonpicking activities as part of the piece rate, which it argued was allowed by the MWA. *Id*.

---

[12] Although the Court has previously denied Plaintiffs' requests to certify a question regarding its on duty not driving claim, the *Caranza* decision warrants reconsideration of this issue. (*See* Dkt. No. 28); *see also Mendis*, No. C15-0144-JCC, Dkt. No. 92 at 8.

ORDER
C17-0028-JCC
PAGE - 15

A five justice majority held that "[t]he plain language of the MWA requires employers to pay their adult workers 'at a rate of not less than [the applicable minimum wage] per hour.'" *Id*. at 1208. The Court rejected the defendant's argument that its workweek averaging method complied with the MWA, noting that "[w]orkweek averaging ignores the per hour right to compensation that the MWA imposes by making it possible to conceal the fact that an employer is not compensating its employees for all hours worked because payment for some hours of piece-rate picking work is spread across all hours worked." *Id*. at 1211.

Although the Court made clear that its holding only applied to agricultural workers, its interpretation of the MWA would seem to apply to all employers. *Id*. at 1222–23 (Stephens, J., dissenting) ("[T]he majority's holding that the MWA provides employees a right to minimum wage compensation for each individual hour of work is based on its reading of RCW 49.46.020, which applies equally to nonagricultural pieceworkers and commission-based employees.) Moreover, the Court did not address how its interpretation of the MWA affects the validity of WAC 296-126-021, which ostensibly allows non-agricultural employers to pay their employees a piece rate based on workweek averaging. *Id*. at 1212 ("WAC 296-126-021 arguably allows workweek averaging when an employer pays its workers on a piece-rate basis. However, that regulation has no role here because agricultural workers are expressly exempt . . . .") As Justice Stephens noted in her dissent, the majority opinion appears to conflict with the way courts, including this one, have handled similar challenges to piece rate compensation. *Id*. at 1223. Aside from involving agricultural workers, the type of uncompensated work addressed in *Caranza* appears analogous to the work Plaintiffs allege to support their on duty, not driving claim in this case.

Given the Supreme Court's interpretation of the MWA in *Caranza*, it is unclear whether Defendants' piece rates—which are based on the workweek averaging outlined in WAC 296-126-021—comply with Washington law. For these reasons, the Court concludes that the law underlying Plaintiffs' on duty, not driving claim is not clearly determined, and that the

Washington Supreme Court is in a better position than this Court to answer this question. The Court also concludes that it is appropriate to resolve this issue prior to addressing Plaintiffs' motion for class certification (Dkt. No. 52). Accordingly, the Court CERTIFIES the following question to the Washington Supreme Court: "Does the Washington Minimum Wage Act require non-agricultural employers to pay their piece-rate employees per hour for time spent performing activities outside of piece-rate work?" For the purpose of answering this question, the Court considers "time spent performing activities outside of piece-rate work" to include: loading and unloading, pre-trip inspections, fueling, detention at a shipper or consignee, washing trucks, and other similar activities. The Court does not intend its framing of the question to restrict the Washington State Supreme Court's consideration of any issues that it determines are relevant. If the Washington State Supreme Court decides to consider the certified questions, it may in its discretion reformulate the questions. *See Affiliated FM Ins. Co. v. LTK Consulting Servs. Inc.*, 556 F.3d 920, 922 (9th Cir. 2009).

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 71) is DENIED. The Clerk of Court is directed to submit to the Washington State Supreme Court certified copies of this order; a copy of the case docket in the above-captioned matter; and, Docket numbers 38, 52–69, and 71–85. The record so compiled contains all matters in the pending cause deemed material for consideration of the local-law question certified for answer.

All proceedings in this case, to include Plaintiffs' undecided motion for class certification (Dkt. No. 52), are hereby STAYED pending the Washington State Supreme Court's resolution of the certified question. A stay of proceedings is appropriate to avoid piecemeal litigation and to conserve the resources of the Court and the parties. The parties are DIRECTED to file a joint status report every 180 days. The Clerk is DIRECTED to statistically close this case.

//

//

DATED this 14th day of June 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE